14136

CRAWFORD v. JOHNSTON, GOVERNOR, ET AL.

(181 S. E., 476)

400

*Messrs. R. E. Carwile, F. Ehrlich Thomson* and *J. C. Long,* for petitioners,

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey, Assistant Attorney General,* and *M. J. Hough, Assistant Attorney General,* for respondents,

September 10, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The purpose of this proceeding, instituted in the original jurisdiction of the Court by a citizen and taxpayer of the State, is to have a certain Act of the General Assembly (38

Stat. at Large, p. 2269), approved April 16, 1934, declared unconstitutional and void, and to have the respondents permanently enjoined from carrying out its provisions.

By the terms of the Act, the Governor and the State Treasurer are authorized "to issue bonds of the State of South Carolina in the following maximum amounts for the purposes of the following State institutions, respectively: South Carolina State Hospital for Insane, $500,000.00; State Training School for the Feeble Minded, $125,000.00; School for the Deaf and the Blind, $25,000-.00; South Carolina Sanitorium, $50,000.00." Section 1.

Section 2 is as follows:

"Bonds issued under this Act shall be made payable in the first instance from one of the two following sources of revenue, as may be determined by the Governor and State Treasurer and stated on the face of the bonds, viz.: First, the gross revenues of the particular State institution for which they are issued, derived from services rendered or facilities afforded by such State institution, or from sales or products of such institutions, or, second, from the gross receipts from any excise, license or privilege tax levied by the State of South Carolina. upon persons, firms or corporations engaged in the business of manufacturing, generating or selling electric power in this State. In either case the bonds shall constitute general obligations of the State of South Carolina, and the full faith, credit and taxing power of the State are hereby pledged for their payment. No bonds shall be issued under this Act, however, unless and until the Governor and the State Treasurer shall determine, in writing, that the revenues or taxes from which they are made payable in the first instance as above provided, will be sufficient to pay the principal of and interest on said bonds, as such principal and interest become due, without resorting to any other taxes or revenues of the State. Such written determination shall be filed in the office of the Secretary of State, before the bonds are issued. After the issuance of any

bonds under this Act, the revenues or taxes from which they are made payable in the first instances, as herein provided, shall, as collected, be paid into the State Treasury of South Carolina, and placed by the State Treasurer ·in a separate and special fund to be used exclusively for the payment of said bonds; *Provided, However,* That whenever and for so long as the amount of money in any such special fund shall be sufficient to pay the amount of such principal and interest falling due within one year thereafter, it shall not be necessary to make further contributions to said special fund."

It is also provided (Section 6) that "bonds issued under this Act shall be sold only to the Federal Government or to any agency or department thereof, the purpose of this Act being to enable the State and its institutions to avail themselves of the benefit of the National Industrial Recovery Act, approved June 16, 1933."

Pursuant to the provisions of the statute, and for the purposes named therein, the respondents have filed with the Federal Emergency Administration of Public Works an application for a loan of $700,000.00 for which bonds would be issued as provided by the Act and, should such loan be consummated, the federal agency has agreed to give as a grant an additional sum of $276,000.00. The respondents have also filed with the Secretary of State their written purpose to issue such bonds, stating that they had "determined that the aforesaid bonds shall be payable in the first instance from the gross receipts from any excise, license or privilege tax levied by the State of South Carolina upon any persons, firms or corporations engaged in the business of manufacturing, generating or selling electric power in the State of South Carolina * * * and that the revenues derived from the receipts of the aforesaid license or privilege tax will be sufficient to pay the principal of and interest on said bonds as such principal and interest become due without resorting to any other tax or revenues of the State."

The petitioner challenges the constitutionality of the Act on several grounds, the first of which is that it creates a debt of the State without submitting the question to the qualified electors thereof, in violation of Sections 7 and 11 of Article 10 of the Constitution.

These sections read as follows:

7. "No scrip, certificate or other evidence of State indebtedness shall be issued except for the redemption of stock, bonds or other evidence of indebtedness previously issued, or for such debts as are expressly authorized in this Constitution."

11. "To the end that the public debt of South Carolina may not hereafter be increased without the due consideration and free consent of the people of the State, the General Assembly is hereby forbidden to create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement or otherwise, except for the ordinary and current business of the State without first submitting the question as to the creation of such new debt, guaranty, endorsement or loan of its credit to the qualified electors of this State at a general State election; and unless two-thirds of the qualified electors of this State, voting on the question, shall be in favor of increasing the debt, guaranty, endorsement, or loan of its credit, none shall be created or made.   *   *   * "

While it is true, as is seen from a reading of the Act, that it provides that the bonds so issued (Section 2) "shall constitute general obligations of the State of South Carolina, and the full faith, credit and taxing power of the State are hereby pledged for their payment," it also provides that "no bonds shall be issued," unless and until the Governor and the State Treasurer shall determine that the revenues or taxes from the source adopted by them, as provided by the Act, shall be sufficient to pay such bonds, principal and interest, "without resorting to any other taxes or revenues of

the State." As already indicated, the Governor and the State Treasurer have filed such determination, in writing, with the Secrtary of State, and have complied with all the necessary requirements of the Act for the issuance of the bonds. It is not seriously contended that the special fund to be pledged for the payment of the obligations may not reasonably be expected, as determined, to be sufficient to meet their payment without resort to a property tax. It is clear, therefore, under the admitted facts, that this case is controlled by the following decisions and that the question presented must be resolved against the petitioner: *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421; *Brownlee v. Brock,* 107 S. C., 230, 92 S. E., 477; *McIntyre v. Rogers,* 123 S. C., 334, 116 S. E., 277; *Barnwell v. Matthews,* 132 S. C., 314, 128 S. E., 712; *Sullivan v. City Council of Charleston,* 133 S. C., 189, 133 S. E., 340; *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153; *Evans v. Beattie,* 137 S. C., 496, 135 S. E., 538; *Thomson v. Christopher,* 141 S. C., 92, 139 S. E., 178; *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269, 282.

In the *Moorer case,* in which the constitutionality of the State Highway Bond Act was attacked—an Act similar in principle to the one before us—the Court, in disposing of the same question there raised, quoted and applied the following from the *Briggs case:* "This Court has held a number of times that obligations of the same character as these bonds, secured by the pledge of a fund which might reasonably be expected to be sufficient to meet the obligations without resorting to the levy of a property tax, did not constitute bonded debt within the meaning of the constitutional limitations, notwithstanding that the full faith, credit, and taxing power of a political subdivision were pledged for the payment of the obligations."

Counsel for the petitioner endeavor to distinguish the case at bar from the several cases cited, but the contention made is without substantial merit.

It is also argued that the Act in question violates Section 34 of Article 3 of the Constitution, which forbids the enactment of a special law where a general one can be made applicable. The contention is that the statute does not affect the State-supported charitable institutions equally, some of them not being benefited at all, and for that reason the Act is invalid.

The objection is without merit. None of the inhibitions named in Section 34 of Article 3 appears to be applicable here. Furthermore, it is doubtful if a general law would meet the situation presented, as the institutions named in the Act have their own peculiar requirements.

Nor do we agree with the petitioner that the Act is unconstitutional, for the reason as claimed by him, that the Legislature thereby delegated to the respondents its power to make laws. In *State ex rel. Richards v. Moorer, supra,* where this question was fully discussed, the Court said, citing numerous authorities in support of the conclusion reached: "There is a distinction, however, between delegating power to make a law and conferring authority or discretion as to its execution. If a legislative Act is clothed with all the forms of law and is complete in itself in form and substance, if the officer, board, or commission to whom the authority is alleged to have been delegated is given no power to add to or to take away from the law as enacted, if nothing is left to discretion as to what shall constitute the form and substance of the statute, and if the Act embodies a full and complete expression of the legislative will, matters which may be fairly regarded as relating to the administration and execution of the statute, even though involving discretion, do not constitute an unauthorized delegation of legislative authority."

And quoted with approval the following from 12 C. J., 840: "While, however, the legislature may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law. Also, the

legislature has power, when enacting a statute creating a new right with its remedy, to vest in some board or person power to adjudicate all matters arising under the statute, and to make such adjudication final and conclusive. The difficulty lies, not in determining the governing principle, but in its application to concrete cases. With the growing complexity of modern life, the multiplication of the subjects of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the legislature, and toward the approval of the practice by the Courts; but this variety of conditions and circumstances, and of laws intended to meet them, has led to a variety of judicial decisions and utterances which the Courts have found difficult to harmonize. Such powers of delegation naturally vary with the scope and authority of the delegating body, Congress and the State Legislatures possessing much wider powers in this respect than the legislative bodies of municipal corporations."

In the *Moorer case,* where the Act conferred upon the highway commission the authority to select either of the two plans named in the statute for the building of State highways, the Court held that this was not a delegation by the Legislature of its power to make laws, but was "nothing more than provision for efficient execution and administration of a finished statute." This case, and the authorities therein cited, furnish a satisfactory answer to the objection of the petitioner.

We find, from a reading of the Act before us, that it is complete in itself. Its plan of administration is fixed, and it is to become operative upon the ascertainment of a particular fact; nothing being left to the discretion of the respondents as to what shall constitute the form or substance of the statute. The authority conferred upon the Governor and the State Treasurer, in the option given them to select one of the sources of revenue for the payment of the bonds, as named and provided for in the Act, is merely an authority or dis-

cretion, as held in the *Moorer case,* "as to the execution of the law."

█ The petitioner alleges, but does not argue, that the Act is invalid, "in that it authorizes the pledging of the electric power taxes to a purpose which is wholly unrelated to the source from which the tax is derived."

This contention is clearly untenable. In *Gregg Dyeing Co. v. Query,* 166 S. C., 117, 164 S. E., 588, 595, the Court, in disposing of a similar question, said: "As a protest, rather than an objection to the statute, petitioner finally urges that it is unjust to tax it and others in like plight for gasoline used in the process of manufacture, while other users of gasolina are benefited by the tax imposed through use of the resultant good roads for the construction and maintenance of which the tax is expended. But, any benefit or improvement to the state as a whole must necessarily affect every citizen thereof, directly or indirectly. At any rate, there is nothing in the state or federal Constitution which requires a state to apply such fees to the benefit of those who pay them. *Carley & Hamilton v. Snook,* 281 U. S., 66, 50 S. Ct., 204, 74 L. Ed., 704, 68 A. L. R., 194."

█ The validity of the statute is also challenged on the ground that it is violative of Section 17 of Article 3 of the Constitution, in that its title, "An Act to Authorize the Governor and State Treasurer to Issue Bonds of the State for Various State Institutions, and to Pledge Certain Revenues for the Payment of such Bonds," does not fully express the general subject of the legislation.

In *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421, 423, the controlling principle of construction of this section of the Constitution is thus stated:

"When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating

this provision of the Constitution. *State v. O'Day,* 74 S. C., [448], 449, 54 S. E., 607; *Aycock-Little Co. v. Southern Ry.,* 76 S. C., 331, 57 S. E., 27; *Johnson v. Road & Highway Commission,* 97 S. C. [205], 212, 81 S. E., 502."

"It is not necessary that the title should be an index of the contents of the statute." *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153, 163. See, also, *Verner v. Muller,* 89 S. C., 117, 71 S. E., 654; *Means v. State Highway Department,* 146 S. C., 19, 143 S. E., 360; *McKiever v. City of Sumter,* 137 S. C., 266, 135 S. E., 60; *State ex rel. Richards v. Moorer, supra.*

Measured by the rules of construction stated in the cases cited, an examination of the wording of the title and of the provisions of the Act before us satisfies any doubt that the constitutional mandate in that respect was fully complied with. The Act has but one general subject—the issuance of bonds for the benefit of certain State institutions. All of its provisions relate to that object and are intended to carry out that purpose. There is no merit, therefore, in this contention.

It is further alleged that the Act is invalid, for the reason that it diverts funds paid into the State Treasury under Section 2564 of the Code of 1932, "thereby making it necessary to raise the amount of such funds by a general property tax or some other tax."

This position is unsound. Unquestionably, the General Assembly may appropriate funds from the State Treasury to whatever purpose it thinks proper so long as its acts are not in conflict with the Constitution, even if in doing so it changes existing laws and requires the levy of additional taxes. The petitioner can point to no provision of the fundamental law which prohibits the legislative action here complained of.

In 12 C. J., 805, the writer says: "The state legislature possesses all legislative power, except such as has been delegated to congress and prohibited by the constitution of the

United States to be exercised by the United States, and such as is expressly or impliedly withheld by the state constitution from the state legislature. The only limitations, therefore, upon the power of the legislature, are those imposed by the state constitution, the federal constitution and the treaties and acts of congress adopted and enacted under it. The powers of the legislature are in no manner limited or restricted by the common law. The constitution as applied to the legislative department is a limitation and not a grant of power."

See, also, *State ex rel. Richards v. Moorer, supra; Evans v. Beattie, supra;* 6 R. C. L., 153.

Finally, the objection is made that the Act is in conflict with Section 3 of Article 10 of the Constitution, which provides that "no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same; to which object the tax shall be applied."

We are not in agreement with this view. The provisions of the statute directing that certain revenues of taxes, levied and collected under existing laws, should be used in the payment of the bonds in the first instance, are not a reenactment, as contended by the petitioner, of the tax referred to in Section 2564 of the Code. No tax is "levied" by the Act before us, in the sense that word is used in the quoted section of the Constitution.

A careful consideration of all the questions raised by the petitioner discloses no substantial merit in his several contentions. In other words, he has failed to sustain the burden cast upon him of showing the unconstitutionality of the statute beyond a reasonable doubt. *McKiever v. City of Sumter,* 137 S. C., 266, 135 S. E., 60; *Means v. State Highway Department,* 146 S. C., 19, 143 S. E., 360; *Wingfield v. South Carolina Tax Commission,* 147 S. C., 116, 144 S. E., 846; *Gregg Dyeing Co. v. Query et al.,* 166 S. C., 117, 164 S. E., 588; *Heslep v. State Highway Department,* 171 S. C., 186, 171 S. E., 913.

The judgment, therefore, of the Court is that the Act in question be, and hereby is, declared constitutional and valid, and that the injunction prayed for be denied and the petition dismissed. And it is so ordered.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.