14579

ARTHUR v. JOHNSTON, GOVERNOR, *ET AL.*

(194 S. E., 151)

*Messrs. Robinson & Robinson,* for petitioners, cite:

*Messrs. John M. Daniel,* Attorney General, *J. Ivey Humphrey* and *M. J. Hough,* Assistant Attorneys General, for respondents, cite:

December 7, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The petitioner commenced his action in the original jurisdiction of this Court alleging that Act No. 339 of the published Acts of 1937, 40 St. at Large, p. 541, is unconstitutional, in that (a) it relates to more than one subject in contravention of Section 17 of Article 3 of the Constitution of the State; and (b) it authorizes the respondents, as Governor and Treasurer, respectively, of the State, to issue State certificates of indebtedness and notes for the purpose of financing the construction of buildings at certain State institutions of higher learning, without securing the approval of the electors of the State in contravention of Section 11 of Article 10 of the Constitution.

The petition sets forth, on information and belief, that respondents in their official capacities pursuant to the provisions of such Act are preparing to issue certificates of in-

debtedness and notes in the sum of $1,350,000.00, for the purpose of turning the same over to the institutions of higher learning in South Carolina as provided in Section 10, Article 1, of the Act, from the proceeds of which certain buildings are to be erected; and prayed that respondents be permanently enjoined from the issuance of the certificates of indebtedness.

Upon this petition, the Chief Justice granted permission to the petitioner to institute this proceeding in the original jurisdiction of this Court, and ordered respondents to show cause before the entire Court why the prayer of the petition should not be granted.

The respondents, by way of return to the order, demurred to the petition upon the grounds: First, the petition does not State facts sufficient to constitute a cause of action, in that there are no allegations of facts alleged which entitle petitioner to the relief demanded. Second, the petition shows upon its face that the acts of the respondents are in pursuance of authority of a valid legislative enactment.

In the able brief presented on behalf of the petitioner, reference is made to the leading cases heretofore coming before this Court involving Acts of the Legislature where it was alleged that such Acts contravened Section 11 of Article 10 of the Constitution, which prohibits the increase of the public debt without first submitting the question to the qualified electors of the State. And the argument is made, in the light of these cases, that the Act under discussion contravenes Section 11 of Article 10, upon the ground that the statute does not make provision for the payment of the obligation from a special fund, derived from the revenues of the special enterprise or project promoted by the Act, which special fund may reasonably be expected to meet the obligations without resort to the levy of a property tax.

This limitation, however, is not sustained by the cases cited and relied upon. It is true that in some of the cases the

fund was derived from the revenue of the special enterprise or project promoted by the Act, but this is not true as to others, and with reference to some of them, it would only be true indirectly.

In the case of *Sullivan v. City Council of Charleston,* 133 S. C., 189, 133 S. E., 340, which was decided by the Court *en banc,* the special fund was not derived from the revenues of any special enterprise or project, but, on the contrary, the same was derived from general property taxes which had previously been levied and remained uncollected. Hence, the Act involved in that case was much more far reaching than that involved in the case at bar. The certificates authorized to be issued by the city, representing past-due and unpaid taxes, not only were guaranteed by the municipality and provision was made for a special levy to supply any deficiency, but an annual levy was authorized to pay the interest on the certificates.

Here the proposal is to set aside a part of the income tax, the amount of which has already been fixed by the law and presumably is reasonably sufficient to take care of the proposed certificates. It will be observed that no new income tax is levied for this purpose, but the income tax already levied is allocated as the fund out of which these certificates are to be paid.

Mr. Justice Cothran relies on this case in his opinion in *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153, 161, and he makes this statement as to the effect of this decision, to wit:

"The guaranty of the City of Charleston of the certificates of indebtedness was an absolute guaranty of payment, upon which the city would become primarily liable at the time of the maturity of the certificates. The holder of a certificate would not, in the event of nonpayment of the certificates at maturity, have to look to the past-due and unpaid taxes upon which the certificates were predicated. Moreover, it appears from the Act that the city could, 'in the

event, at any time, sufficient of the said due and unpaid taxes have not been collected to meet the payment * * * at the time such guarantee provides for payment, * * * forthwith levy and collect a tax' to pay the certificates, *i. e.,* the city could, if it foresaw an insufficiency in the collections of back taxes, levy the new tax prior to the time of maturity of the certificates. It is noteworthy also that the interest on the certificates was to be paid out of a new tax. Furthermore, we wish to call attention to the provision in the Act directing the city to make the certificates payable at such time as in the opinion of the city it was probable that the collection of the back taxes would enable the city to pay the certificates. Similar provisions are to be found in the Greenville Bond Act and in the General Bond Act.

"From the foregoing review of the decisions, it is obvious that the present case cannot be distinguished from the previous cases upon the ground that the obligations here in question are payable primarily out of an *ad valorem tax.*"

Section 13 of Article 1 of the Act under discussion is as follows:

"For the purposes of Article 1 of this Act it is hereby determined and found that the revenue referred to in Section 11 of said Article is and will be sufficient to pay all State Certificates of Indebtedness authorized herein, both as to principal and interest, as they respectively become due."

As was said in the case of *Briggs v. Greenville County, supra,* quoted with approval in *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269: "The underlying purpose of the constitutional provisions concerning the creation of State debt was that they should serve as a limit of taxation—as a protection to taxpayers, and especially those whose property might be subjected to taxation."

It certainly cannot be contended that an income tax is an *ad valorem tax.* An *ad valorem* tax is, of course, a property tax. Black's Law Dictionary defines it as

follows: "The term '*ad valorem* tax' is as well defined and fixed as any other used in political economy or legislation, and simply means a tax or duty upon the value of the article or thing subject to taxation."

See, also, 2 C. J. S., *ad valorem,* 496. It is true that in the case of *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S., 429, 15 S. Ct., 673, 39 L. Ed., 759, the Supreme Court of the United States held that an income tax was a direct tax in the sense of the Federal Constitution, although this had been a very much mooted question about which there was great difference of opinion. Certainly it is not a direct tax in the ordinary meaning of that expression. But aside from this, it is manifestly not an *ad valorem* tax or a property tax, either technically or practically.

It is, of course, true that the use of the income tax for the purpose of paying these certificates prevents its use to that extent for any other purpose and will thus deplete the funds of the State to the extent of such payments. But that is true of every case sustaining the issuance of such bonds or certificates. In the case of *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269, the primary source for the payment of the obligations was the gasoline tax, and the issuance of these bonds was held not to increase the State's debt, although it is obvious enough that the use of the gasoline tax for this purpose depletes the revenues of the State to that extent.

The case of *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476, was decided as late as September 10, 1935, and the decision of this Court sustained the issuance of bonds for certain institutions of the State without an election, although the primary source for the payment of such bonds by the provisions of the Act itself is the gross receipts from any excise, license, or privilege tax levied by the State on persons, firms, or corporations engaged in the business of manufacturing, generating, or selling electric power. These revenues are not derived from the special enterprise or proj-

ect promoted by the Act. In other words, the manufacture, generation, or sale of electric power has no special or direct connection with the State institutions which were the beneficiaries under the Act. It was contended there that the pledging of the electric power taxes to a purpose which is unrelated to the source from which the tax is derived invalidated the Act, but the Court held that this contention was untenable. The certificates of indebtedness authorized by the Act before the Court in the case at bar conform to the Constitution as fully in all respects as those authorized in the *Crawford case.*

While this Court is not concerned with the wisdom of an Act, as in this case, which authorizes the pledging of the special fund to a purpose not related to the source from which the tax is derived, the Court is of opinion that the sounder view is expressed in that legislation, and upheld in several cases, that such special fund should be derived only from a source related, directly or indirectly, to the project for the promotion of which the obligations are pledged.

The title of the Act under discussion is as follows:

"An Act to Provide for the Construction of Buildings at Certain State Educational Institutions and for the Payment, with Interest, of Certain Certificates of Indebtedness of the State, and for These Purposes to Authorize the Issuance of Evidences of Indebtedness of the State, and to Appropriate and Provide for the Disposition of a Certain Portion of the Income Tax; and to Replace Revenue Available for School Purposes Under Existing Laws by Amending Section 6, of Act No. 232, Acts of 1935, Entitled 'An Act to Define Alcoholic and Non-Alcoholic and Non-Intoxicating Beverages; Etc.,' By Changing the Rate of Tax Provided Therein and Thereby Provide Supplementary Revenue for School Purposes."

Section 17 of Article 3, Constitution, is as follows: *"One Subject.*—Every Act or resolution having the force of

law shall relate to but one subject, and that shall be expressed in the title."

The title of the Act indicates that its real purpose is to provide for the construction of buildings for certain State educational institutions. That is the subject of the Act and the one subject thereof. To accomplish this purpose the Act allocates a certain portion of the income tax, and since such allocation would reduce the revenues of the State now being used for school purposes, the liquor tax was increased. It is no doubt true that in the body of the Act the connection between the various articles thereof might have been stated more explicitly.

But it is no novel principle to construe an Act with reference to its title, and the body of the Act taken in connection with the title manifests the legislative purpose, to wit, to construct the much-needed buildings, using the income tax for that purpose, and increasing the liquor tax to replace revenue available for school purposes depleted by such use of the income tax. *Robson v. Cantwell, Supervisor,* 143 S. C., 104-116, 141 S. E., 180, 181. Section 17 of Article 3 of the Constitution must, of course, be liberally construed in the light of its purpose, which is really to prevent fraud on the Legislature by hodge-podge or log-rolling methods. It certainly should not be so construed as to defeat the legislative will merely because the language of the Act might have more clearly shown the connection between its various articles and sections. In the case of *Poulnot v. Cantwell,* 129 S. C., 171, 123 S. E., 651, 653, the Court held that as used in this section of the Constitution "subject" is the thing legislated about, or the matter or matters upon which the legislation operates, to accomplish a definite object, or objects reasonably related one to the other."

In the case of *Southern Power Company v. Walker,* 89 S. C., 84, 71 S. E., 356, 358, the Court, speaking through Mr. Justice Gary, states the principles which

should govern in the application of this section of the Constitution, as follows:

"The purpose of this provision is stated in Cooley's Con. Lim., pp. 171, 172, to be: 'First, to prevent hodge-podge, or log-rolling legislation; second, to prevent surprise or fraud upon the Legislature, by means of provisions in Bills, of which the title gave no intimation, and which might therefore be overlooked, and carelessly and unintentionally adopted; and third, to fairly apprise the people, through such publication of legislative proceedings, as is usually made, of the subjects of legislation, that are being considered, in order that they may have opportunity, of being heard thereon, by petition or otherwise, if they shall so desire.

" 'The generality of a title is, therefore, no·objection to it, so long as it is not made a cover to legislation, incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection.'

"On page 175 the author also says: 'There has been a general disposition, to construe the constitutional provision liberally, rather than to embarrass legislation by a construction, whose strictness is unnecessary, to the accomplishment of the beneficial purpose for which it has been adopted.'

" 'When an Act of the Legislature expresses in its title the object of the Act, the title embraces and expresses any lawful means to achieve the object, thus fulfilling the constitutional injunction that every law shall embrace but one subject, and that shall be expressed in its title.' This language was used by the Court in *San Antonio v. Lane,* 32 Tex., 405, and adopted in *Charleston v. Oliver,* 16 S. C., 47, and *San Antonio v. Mehaffy,* 96 U. S. [312], 315, 24 L. Ed., 816."

"The mandate of the Constitution is complied with if the title states the general subject of legislation and the provisions in the body of the Act are germane thereto as

means to accomplish the object expressed in the title. *Connor v. Green Pond Railroad Co.*, 23 S. C., 427; *State v. O'Day*, 74 S. C., 448, 54 S. E., 607." *Verner v. Muller*, 89 S. C., 117, 71 S. E., 654, 655. Cited with approval in *McKiever v. City of Sumter*, 137 S. C., 266, 135 S. E., 60, and in *Plowden v. Beattie*, S. C., 193 S. E., 651.

The prayer for an injunction is denied and the petition dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.