15340

STATE *EX REL.* BROWN *ET AL. v.* BATES, STATE TREASURER

(18 S. E. (2d), 346)

432

*Mr. Frank A. Graham, Jr.,* of Columbia, and *Mr. Thos. M. Boulware,* of Barnwell, for petitioners,

*Mr. John M. Daniel,* Attorney General, and *Messrs. M. J. Hough* and *T. C. Callison,* Assistant Attorneys General, for respondent,

Counsel for petitioner,

December 12, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

Chapter 162 of the Code, Sections 8507 to 8530-2, as amended (See 1941 Report of Code Commissioner for various amendments to Code provisions), subjects "motor vehicle carriers" engaged in the business of transporting persons or property for compensation, to special license charges and regulations which are not applicable to the owners of other motor vehicles. The Act of 1941, numbered 167, 42 Stat. at Large, p. 227, directs among other things that the license-fees collected under Chapter 162 of the Code as amended "shall, after the cost of administration and collection have been deducted, be turned into the State Treasury. to the credit of the General Fund of the State."

In this proceeding in the original jurisdiction of the Court the petitioners, describing themselves as taxpayers and as owners and operators of motor vehicles used in the transportation of property for hire under licenses issued to them by the Public Service Commission, are seeking an injunction against the State Treasurer to prevent him from carrying out this statutory direction, charging in the main that the 1941 Act violates Article X, Section 2 of the Constitution, in that the purpose of the Act, as shown by additional provisions thereof which are not attacked in this case, is to provide for a State deficit and that the Act does not provide for the levying of a tax for such purpose in accordance with the requirements of the constitutional provision stated; and that it violates Article X, Section 3 of the Constitution, in that, it is alleged, the license fees in question con-

stitute a tax levied for a special purpose, to wit: "for the use of the roads comprising the State Highway System," and that the 1941 Act seeks to "divert" the same to the general financial purposes of the State; and that the Act also violates the State and Federal Constitutions, Const. S. C. art. 1, § 8; Const. U. S. art. 1, § 10, in that it impairs the obligation of the contract of the State as represented by its outstanding State Highway Certificates of Indebtedness.

Additional provisions of the same Act relate to the issuance of notes in the amount of Two Million, Two Hundred and Fifty Thousand Dollars to provide funds to pay the current indebtedness of the State (a "deficit") as of June 30, 1941, or to restore funds received after June 30, 1941, and applied to such current indebtedness, and pledge the motor vehicle license fees in question for the payment of the notes so issued.

In substance, the foundation of the petition may be said to be that under the provisions of Chapter 162 of the Code as amended, the license fees in question, having been imposed (exclusive of the costs of enforcement of the Act and of the specified proportion which under the law goes to the counties, cities and towns) "for the use of the roads comprising the State Highway System" there has been a statutory allocation of these funds which bars the legislature from diverting or appropriating the same to any other purpose. To support this contention, petitioners rely upon the State Highway Bond Act of 1929, 36 Stat. at Large, p. 670, and upon the decisions of this Court construing the same, such as, *State v. Moorer*, 152 S. C., 455, 150 S. E., 269; *State ex rel. Edwards et al. v. Osborne et al.*, 193 S. C., 158, 7 S. E. (2d), 526; *State ex rel. Edwards et al. v. Osborne et al.*, 195 S. C., 295, 11 S. E. (2d), 260.

The respondent has demurred to the petition on various grounds. As we view the matter it will be necessary to consider only the ground of demurrer that the motor vehicle license fees in question are subject to the control of the legislature; that is to say, that the funds derived from such li-

censes are part of the general funds of the State, and not funds derived from a tax or license imposed for a specified purpose within the meaning of the constitutional provisions upon which the petitioners rely.

A proper regard for the constitutional principle under which legislative and judicial powers are entirely separate and that one branch of the government should exercise its powers in such manner as not to infringe upon the functions of another branch, requires us to approach the problems in this case with two cardinal principles in mind, to wit: (1) The intention of the legislature in the enactment of the State Highway Bond Act should first be sought. Refinements of legal argument, however ably presented, should not be permitted to lead us into a field of discussion or speculation which would impose upon the legislative purpose or result that which was not within the contemplation of the legislature. *Windham v. Pace,* 192 S. C., 271, 6 S. E. (2d), 270. And (2) if when the intention of the legislature in the enactment of the State Highway Bond Act has thus been ascertained, the attack upon the constitutionality of the 1941 Act is found to rest upon principles which do not conclusively establish its unconstitutionality, the doubt must be resolved in favor of the constitutionality of the Act. In other words, recognition must be given to the legislative view that the enactment of the 1941 Act transgressed no constitutional limitation, unless it is made to appear that some specific constitutional limitation has been so palpably violated as to demand the exercise of the extraordinary power of the judiciary to nullify legislative action. *State v. Moorer et al., supra; Federal Land Bank v. Garrison,* 185 S. C., 255, 193 S. E., 308.

Bearing these principles in mind, we proceed to a consideration of the intention and purpose of the legislature in the enactment of the pertinent legislation, as disclosed by the stated objects of the same and the language employed in the legislative directions to carry such objects into effect.

Presumably the petitioners do not question the elementary proposition that ordinarily the proceeds of tax levies (including license fees) may be appropriated to any public purpose, and that by successive legislative Acts the appropriation of any particular tax levy may be changed from one public purpose to another in the uncontrolled discretion of the legislature, *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476. The burden of their argument here is that in the present case the motor vehicle license fees in question were imposed specifically for the purposes of the State Highway Department, and that by virtue of the statutory language designating such purposes, and of the State Highway Bond Act of 1929, providing for a larger amount of bonded indebtedness and for the construction of a State Highway System on the faith of the taxes described in said Act, the license fees now in question were specifically allocated in a constitutional sense to the purposes stated, and that until such purposes have been accomplished, an appropriation of any substantial part of such funds to any other purpose is an unconstitutional "diversion," (in view of the issuance of bonds under the 1929 Act) a violation of the contract clauses of the State and Federal Constitutions.

So we turn to the legislation under discussion to determine whether the language used by the legislature discloses any such legislative purpose in the imposition of the license fees in question. If it does not—in other words, if such legislation discloses that the motor vehicle license fees in question were imposed as a part of the general fiscal policy of the State, to provide funds which would be within the control of the legislature as are other State funds not specifically allocated in a constitutional sense—then of course the argument of the petitioners falls.

As a practical matter it may be said that the origin of the present system of licensing and regulating motor vehicle carriers for hire stems from the Act of 1925, 34 Stat. at Large, p. 252. That Act imposes license fees on such car-

riers and subjects them to various regulations not applicable to motor vehicles generally. The license fees are expressed to be in lieu of any other license fee or license tax charged by the State (Section 6); and the funds derived from this tax imposition are directed to be paid into the State treasury. After the deduction of the costs of administration, specified proportions of the funds collected are required to be paid to the counties, cities and towns. The balance is deemed to be "collected for the use of the roads comprising the State Highway System." The administration and enforcement of the Act are placed entirely in the hands of the State Highway Commission.

By an Act passed in 1928, 35 Stat. at Large, p. 1238, the administration of this legislation, including the collection of the license fees, is "transferred to and devolved upon the South Carolina Railroad Commission."

A Statute passed in 1930, 36 Stat. at Large, p. 1398, provides that in addition to the license fees imposed by the 1925 Act (and which at the time of passage of the 1930 Act were of course payable to the South Carolina Railroad Commission) motor vehicle carriers for hire shall pay to the State Highway Department an annual license fee as provided by the general law relating to the owners of similar vehicles which are not encompassed within the 1925 legislation as amended. The further provision of this Act that "all funds derived by the State Highway Department from the provisions of this Act shall be credited to the State Highway Fund and used for the construction and maintenance of the State Highway System," obviously refers to the regular license fees directed to be paid to the State Highway Department, and not to the additional fees imposed by the 1925 legislation as amended.

Except as to amendments which are not relevant to the problem in hand, and to the constitutional amendment changing the name of the Railroad Commission to the Public Service Commission, Const. art. 9, § 14, 39 Stat. at Large,

pp. 25-26, this represents the present state of the legislation on the imposition and disposition of the special and extra license fees imposed on motor vehicle carriers for hire. The petitioners by relating this legislation to the State Highway Bond Act of 1929, and to the decisions of this Court thereunder *(State v. Moorer; State ex rel. Edwards et al. v. Osborne et al., supra)* contend that there has been a specific constitutional allocation of the funds so as to put them beyond subsequent legislative diversion to any other purpose than for the use of the Highway Department.

But an examination of the 1929 Act conclusively negatives this contention of the petitioners. The pertinent Section of the Act is Section 8 of Article III, Acts 1929, p. 682, Code, Section 5969, which is as follows: "From and after the approval of this Act by the Governor, *the entire amount of the revenues derived from the gasoline tax and the motor vehicle license tax, except such portion, if any, of the gasoline tax as shall exceed the amount of a gasoline tax levied at the rate of five cents per gallon,* shall be turned over to or held by the State highway department and paid out as provided in this section. Not more than thirty days prior to the beginning of each calendar year the *State highway commission shall make an estimate of the revenues to be received by the State highway department* during said calendar year from said gasoline tax and motor vehicle license tax and shall also estimate the amounts required for the following purposes respectively, which estimated amounts are hereby appropriated for said purposes, respectively. * * * (Italics added.)"

The 1929 Act, it is seen, relates to the "entire amount of the revenues" derived from the motor vehicle license tax. This language could not have been intended to apply to the license fees obtained under Chapter 162 of the Code, because those fees are subject to two specific charges before they are to be turned over, to wit: (1) The expense of the administration and enforcement of the legislation relating to motor vehicle carriers for hire; and

(2) the specified proportions of the license fees which are to go to counties, towns, and cities.

It is significant that in dealing with the gasoline tax, the amount of which is six cents per gallon, the 1929 Act specifically excepts such portion of the tax as is required to be turned over to the counties. If it had been intended to embrace the license fees imposed under Chapter 162 of the Code, would not a similar exception have been incorporated in 1929 Act as relating the these particular fees?

The further provision of the 1929 Act that each year the State Highway Department shall develop its road program out of the available funds provided by the Act by annually estimating the revenues "to be received by the State Highway department" and the amounts required for the purposes stated in the Act is also of significance, because Chapter 162 of the Code does not provide for the revenues collected thereunder to be received by the *State Highway Department*. They are received by the Public Service Commission. And the items which the State Highway Department is to provide in making up its estimate nowhere take into account the administration or enforcement of the provisions of Chapter 162 of the Code, or the distribution of a part of the fees in question to counties, towns, and cities.

Further emphasis is given to the view that the motor vehicle license fees to which the 1929 Act refers were not intended to encompass those embraced in Chapter 162 of the Code by the above-stated fact that under the latter is it expressly provided that in addition to the fees imposed thereby, the motor vehicle owners *shall pay to the State Highway Department* the fees imposed by Section 5894 et seq., of the Code. In other words, the classes of motor vehicle owners embraced within Chapter 162 of the Code pay to the State Highway Department under Section 5894 et seq., of the Code, the motor vehicle license fees paid by the owners of privately used vehicles, and in addition pay to the Public Service Commission the special license fees imposed under Chapter 162 of the Code. Thus the Legislature itself has

made a classification of the fees, bringing one class specifically within the 1929 Act, and by inference excluding the other.

It is to be observed, also, that motor vehicle carriers for hire must obtain in addition to the license plates furnished by the State Highway Department, special license plates issued by the Public Service Commission; and unlike other motor vehicle owners, they are subject to regulation by the Public Service Commission. And the qualifications of drivers and licensees are wholly different from, and in many instances additional to those imposed upon motor vehicle owners generally.

Giving effect to all these differences between motor vehicle license fees as imposed under Section 5894 et seq., of the Code, and undoubtedly encompassed within the 1929 Act, and the extra license fees imposed under Chapter 162 of the Code as amended, we are unable to accept the view that the additional license fees imposed exclusively upon motor vehicle carriers for hire were within the contemplation of the Legislature when it adopted the 1929 statute.

In this view of the case it becomes apparent that the fees collected under Chapter 162 of the Code as amended, to the extent that they are not expended for administration and enforcement of the law, or distributed to counties, towns, and cities, are part of the general funds of the State, and that when they are turned over to the State treasury each month, as required by Section 8517 of the Code (Chapter 162), they are subject to appropriation and disbursement for any lawful purpose within the discretion of the Legislature.

In short, it cannot with confidence be said that the license fees imposed upon motor vehicle carriers for hire by the Act of 1925, and the amendments thereto, are part of the license fees which under the 1929 Act are specifically allocated in a constitutional sense, nor can it be doubted that the tax thus imposed differs in any sense from other special classes of taxes imposed upon public utilities and other distinct

classifications of taxpayers to provide for administering and enforcing legislation, with the express or implied direction that any suplus of such funds, shall become a part of the general funds of the State. *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476.

Having thus reached the conclusion that neither under the provisions of Chapter 162 of the Code as amended, nor under the State Highway Bond Act of 1929, was there a legislative purpose to allocate in a constitutional sense the special revenues obtained from the issurance of licenses to motor vehicle carriers for hire, we are constrained to hold that the 1941 Act directing the payment of the net proceeds of these fees by the Public Service Commission to the State Treasurer to be credited to the general fund of the State is not subject to any of the constitutional or other objections upon which the petitioners rely.

We do not concern ourselves with the suggestion of the petitioners that the argument for the respondent in support of the 1941 Act stigmatizes these license fees as a charge for the privilege of doing business in the State of South Carolina, which it is said would have the effect of invalidating the same as to both interstate and intrastate carriers under various provisions of the United States and State Constitutions. That problem is not before the Court. Neither the requisite statistical data nor legal specifications sufficient to present the issue are anywhere contained in the record.

The respondent questions the right and eligibility of the petitioners to sustain the action. Because of the importance of the question involved, we have deemed it advisable to dispose of the case on its merits. It may be seriously questioned whether as a matter of judicial policy a taxpayer, merely as such, has the right to ask the Courts to override the action of a coordinate branch of the Government in appropriating public money for a lawful purpose. A small group of taxpayers cannot possibly have any material financial interest in the matter. All taxpayers suffer alike, and in such infinitesimal amounts that the Court will not notice the

same. A different situation is presented when a bondholder attacks an appropriation on the ground that his vested interests in his bonds will be impaired. But we are not adjudicating anything on this question in the present case.

For the reasons above stated, the injunction sought by the petitioners is refused, and the petition is dismissed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER concur.

## ON PETITION FOR REHEARING

*Per Curiam.*

The petitioners ask for a rehearing in this case on the stated ground that the Court has not given consideration to the contention of the petitioners to the effect that the statute in question herein violates the constitutional direction (Article X, Sec. 3) that a tax may not be diverted from the object stated in the Act which levies the same.

In the opinion filed it is expressly stated as the Court's conclusion that the statutes with which we are dealing (Code Ch. 162 as amended) do not evince "a legislative purpose to allocate in a constitutional sense the special revenues obtained from the issuance of licenses to motor vehicle carriers for hire," and that the fund resulting from the operation of such statutes does not come within the purview of the State Highway Bond Act of 1929.

Thus it is apparent that the issues presented in the petition for rehearing have been definitely adjudicated adversely to the contentions of the petitioners.

It appears to us that the misapprehension under which able counsel for the petitioners are laboring lies in their subsidiary contention that the mere fact that a statute designates a particular use to be made of the proceeds of a tax levy is itself sufficient to bring it within the constitutional rule that the tax has been levied for (in the sense of "allocated" to) a stated object and that the fund may not be applied to any other purpose (Const. Art. X, Sec.

3.) There is, however, a fundamental difference between the mere statement in an Act levying a tax as to the use that shall be made of the same, and the "allocation" of the tax in a constitutional sense to the stated object.

When, as in the case of the enactment of the State Highway Bond Act of 1929, a definite project or "object" is undertaken by the Legislature, and to finance that object, a tax, whether levied or not by the same statute, is specifically allocated to the accomplishment of that object, it is not within the power of the Legislature, so long as the project or object has not been completed, to divert the tax to some other purpose.

This statement of the governing principle is made clear by the decisions of this Court in the cases of: *Morton, Bliss & Co. v. Comptroller General*, 4 S. C., 430; *State v. Leaphart*, 11 S. C., 458: *State ex rel. McKinlay v. Cardozo*, 8 S. C., 71, 28 Am. Rep., 275; *State ex rel. Edwards et al. v. Osborne et al.*, 193 S. C., 158, 7 S. E. (2d), 526, 528; *State ex rel. Edwards et al. v. Osborne et al.*, 195 S. C., 295, 11 S. E. (2d), 260.

But if, for example, the Legislature were to impose an additional income tax and were to direct that the same be applied to the maintenance of the educational institutions of the State, it would not follow that at some later date the Legislature could not direct the application of the same additional levy to other State purposes. The limitation on legislative power is directed against the creation of the confusion in fiscal affairs of the State which would arise from the concomitant initiation of new State projects and the levy of taxes to carry the same into execution, and the subsequent diversion of such taxes to other purposes before the projects have been carried to completion.

In the present case the project of the State Highway System is encompassed within a comprehensive tax plan that is in no sense dependent upon the fund created by the legislation with which we are dealing here. This legislation does, it is true, impose upon common carriers for hire a license

445

which in a sense represents compensation for the use by such carriers of the highways of the State. Whether the proceeds of the license charge go directly into the State Highway Fund, or go into the treasury of the State for general State purposes, it is still true that out of the funds of the State the highways are constructed and maintained in part for the use and benefit of common carriers for hire, and that in paying the special license charges imposed by Chapter 162 of the Code as amended, they are paying for the identical public purposes and services when the funds go into the treasury of the State that they would be paying for if the funds went into the State Highway Fund.

We reiterate the statement in the opinion filed that we are not dealing in this case with the constitutional question of the right of the Legislature to impose license charges upon either interstate or intrastate common carriers for the privilege of doing business in South Carolina. That question is not presented by the record.

The petition for rehearing is refused.

Let this order be published with the opinion of the Court.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER concur.