15622

WARD ET AL. v. COBB ET AL.

(28 S. E. (2d), 850)

September, 1943.

*Messrs. Hart & Moss,* of York, S. C., *Messrs. Wilson & Wilson* and *Mr. John T. Roddey,* all of Rock Hill, S. C., Counsel for Appellants,

*Mr. R. B. Hildebrand,* of York, S. C., Counsel for Respondents,

February 8, 1944.

CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, delivered the unanimous Opinion of the Court:

In the year 1927 the General Assembly established in York County the Catawba-Ebenezer Township Health Commission, AA 1927, page 113. The appellants are the members of this Commission, together with two taxpayers, who were allowed to intervene. In 1943 a County Board of Health was established in York County by the Legislature. A A, 1943, page 289. The respondents are the members of the board. The act was approved by the Governor on April 24, 1943, and soon afterwards the County Board of Health called upon the Catawba-Ebenezer Commission to turn over

to it a balance of $9,620.10 which the Township Commission had on hand, or to its credit with the County Treasurer. This was an accumulation of taxes collected by it over a period of years from the property owners of the two townships. The Commission refused to comply and this suit for a mandamus was instituted. The appellants filed a demurrer and a return, in which they objected to the prayer of the petition and interposed a number of grounds relating to the validity of the act of 1943.

His Honor, Judge A. L. Gaston, heard the case and passed an order requiring the Catawba-Ebenezer Commission to transfer the funds to the County Treasurer of York County to be placed by him to the credit of the County Board of Health. The appeal is from this order.

The appellants first contend that mandamus is not the proper remedy, since the act of 1943 refers to monies to the credit of the "Township Health Commission of York County. Appellants say that they are not the "Township Health Commission," but by the act of 1927 the body which was created was known as the "Health Nurse Committee Commission," and so the act of 1943 does not impose upon them a plain ministerial duty.

It appears that York County by several legislative acts has been divided into three health districts. Besides this one, which included the City of Rock Hill, there was the Fort Mill Township District (AA 1936, page 1464), and a third health unit which consisted of all the other townships of the county. (AA 1930, page 2126; AA 1933, page 1150.) They also were under health nurse commissions.

We think that there can be no question that when the General Assembly used the words "Township Health Commission of York County" in the act of 1943 its intention was to refer to these three township health nurse commissions. This is made doubly clear when we note that the act provides that the services of the three nurses employed by the several township health commissions shall

be retained by the County Board of Health and assigned to the territories in which they are now located.

In statutory construction the primary endeavor of the courts is to ascertain and give effect to the legislative intent. The act here being thus construed, we do not think that this exception can be sustained.

In the next group of exceptions it is contended that the Circuit Judge was in error in holding that the act of 1943 has repealed the earlier statute of 1927.

It is quite true that there is no express repealing clause in the latter act, and so the question is, Does it repeal the 1927 enactment by implication? Repeal of statutes by implication is not favored, but here the later statute covers the entire field of public health in York County, and makes it clear that it was intended to be a substitute for all prior legislation on the subject. It not only provides that the three nurses of the township commission shall be employed by the county department, but also provides that all the monies of the township commissions shall be used by the county board. The annual supply bill for York County for the year 1943 failed to levy any tax for the township units. It appears, therefore, that the township commissions are not only deprived of their personnel, but are left without any funds for operation. No purpose could be accomplished by the continued existence of the commission, since it has no funds or nurses, and no further duties to perform.

We think that it is clear that it was the intention of the Legislature that the county-wide act should supersede the statute which had established the township unit. The act of 1943 is entirely repugnant to the earlier statute, and fully embraces the whole subject-matter to such an extent that it is not capable of any reasonable reconcilement with the 1927 act. It cannot be construed so that both can stand. *Pearson v. Mills Mfg. Co.*, 82 S. C., 506, 64 S. E., 407. The last act of the Legislature is the law, and has the effect

of repealing all prior inconsistent laws. In our opinion the act of 1927, as amended by the act of 1940, page 2829, has been repealed.

Another objection of the appellants is that the act creating the County Board of Health does not give the board authority over health conditions within the municipalities of the county.

We think that it is clear from section five of the act that the County Board has authority over the entire county, including both the municipalities and the rural areas. This section and section three set forth in detail the many duties and activities of the board. It would be hard to find more broad or all-inclusive language, and it seems to have been intended to cover all parts of the county.

In section six of the statute it is provided that any municipality may, by adoption of an ordinance, join with the County Health Department and be under its control and direction; in which case all the rights and duties now imposed by law upon municipal boards of health shall cease to be of force. This section, in our opinion, when construed with section five, places no limitation upon the authority of the County Board, but its purpose is to permit a municipality, if it so desired, to relieve itself of any local responsibility as to public health, except as to water supply and sewerage disposal, and to transfer that responsibility to the County Board. If a municipality so desired it could continue the operation of its board of health concurrently with the County Board.

This is quite plainly shown by the provision that the County Board should assign the same three nurses who were then in the employ of these township units to the same territories in which they were located. They had been rendering service within the limits of the municipalities, and were to continue to do so.

A number of constitutional grounds are raised by the appellants. It is urged that the 1943 act is in conflict with Article 3, Section 17, of the Constitution providing that every act shall relate to but one subject, and that shall be expressed in the title. The title of the act is "An Act to Create and Maintain a County Board of Health and a County Health Department for York County, to Prescribe Their Powers and Duties and to Levy a Tax and Otherwise Provide Funds for Said Purpose."

The act we think relates to but one subject-matter, and that is expressed in the title. It has been stated in many cases that it is not necessary that the title of an act should be an index of its contents. The broad subject of the legislation is a board of health and a health department for York County, and all the provisions of the act relate to that primary subject and are intended to carry it into effect.

In the case of *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421, 423, it was said:

"When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating this provision of the Constitution."

In another group of exceptions it is contended that the act of 1943 brings about a diversion of tax funds in violation of Article 10, Section 3, of the Constitution, which provides that no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, and to which object the tax shall be applied.

Section 3 of the Act of 1927 is as follows:

"In order to provide sufficient funds to pay the compensation of such nurse one-half mill is hereby levied upon all of the taxable property in Ebenezer and Catawba Townships in York County to be collected by the Treasurer, as

all other taxes are collected, and placed in the Treasurer's office as a special fund for a health nurse in Ebenezer and Catawba Townships."

By an act of 1940, page 2829, the 1927 statute was amended so as to permit the commission to engage more than one nurse and to use the funds "for the payment of the salaries of said nurses; and for any other purposes connected with their service, which in the discretion of the Commission, would contribute generally to the promotion of public health in these two townships."

Section 3, of the 1927 act, was amended so as to read in part as follows: "The funds necessary to pay the salaries and expenses of such nurses as may be employed hereunder shall be raised by such annual tax levy as may be included in the York County Supply Bill for each year. As such taxes are collected the Treasurer shall place the same in a separate fund to the credit of the Health Nurse Committee Commission for said township."

The County Supply Bills which were in force for the years 1940, 1941, and 1942, provided that "In the Catawba and Ebenezer Townships, a special levy of one-half mill is hereby made and the proceeds therefrom shall be used in said townships for the support and maintenance of a public health nurse in said townships, as provided by the Act of the General Assembly of 1927."

It is well recognized that the Legislature has full power in matters of taxation subject to express constitutional limitations, and that a statute will if possible be construed so as to render it valid, and will not be declared unconstitutional unless its invalidity is clear and beyond reasonable doubt, every presumption being made in favor of its constitutionality. *Clarke v. South Carolina Public Service Authority*, 177 S. C., 427, 181 S. E., 481.

This tax was levied and collected in accordance with the constitutional provision, but is it to be applied to the proper object? It is clear that the tax was col-

lected and placed in a special fund for a health nurse and connected purposes for these two townships, and we think that to apply the accumulation of the annual tax collections to the benefit of the county-wide Board of Health would be an unlawful diversion of taxes which had been collected solely from the taxpayers of these two townships for strictly local purposes. It is perfectly true that such diversion would not be for a wholly different purpose. The purpose would still be for health in a general way, and it is also true that the statute provides, as we have seen, that the same health nurse shall be employed in the Catawba-Ebenezer area, and at not less than her present salary. However, the act of 1943 states that this $9,620.10 shall be used by the County Health Department in financing its operations during the fiscal year 1943-44. While the record does not show the amount of the nurse's salary, there can be no doubt that for the fiscal year 1943-44 it would be considerably less than $9,620.10, and if the entire fund of the Catawba-Ebenezer Commission were used by the County Board during that year, it necessarily follows that a great portion of the accumulated taxes raised from property in this area would be diverted to the benefit of other sections of the county and used for purposes other than that of a nurse or kindred objects in the two townships of the appellants. The act of 1943, for example, provides for the employment of a full time director who is to be a physician, and it is also provided that such additional personnel shall be employed as is consistent with the needs of the county. It appears that the other two health units of the county have balances on hand, but the record does not show the amount of them or whether such balances are sufficient to pay the salaries of their nurses for the fiscal year 1943-44. If they do not have sufficient balances for that purpose, a part of the amount collected from the taxpayers of the Catawba-Ebenezer district would be used by the County Board to pay the nurses of other health units. If the other two health districts do have balances sufficient for the payment of the

nurses to be allotted to them, then a portion of the Catawba-Ebenezer fund would be used for the payment of the salary of the director and for other general expenses of the County Board. There is no showing that the amounts pooled and contributed to the county fund would equalize the three township units so far as relative population and tax values are concerned, nor that the Catawba-Ebenezer district would be benefitted to the extent of $9,620.10 by the handling of the joint fund by the County Department. So that even if it is sought to apply the taxes to a substantially similar object, it would be in a different territory, and would benefit those who had not shared in the tax burden.

The question of diversion of revenues was under consideration in the case of *State ex rel. Edwards v. Osborne,* 193 S. C., 158, 7 S. E. (2d), 526, 532, and it was declared:

"It may be conceded that the Legislature has plenary power in connection with the imposition of taxes to change its mind from year to year as to the purposes to which in each year it will apply the proceeds of particular sources of revenue (in the absence of any question of impairing the obligation of a contract); but under the present constitutional provision it is without power to impose a tax for a particular purpose, and before such purpose has been accomplished, to change its mind and direct the revenues derived from the particular tax to an entirely different purpose."

There is a distinction between the mere fact that a statute designates a particular use to be made of a tax levy and specific allocation of the fund to a particular purpose, as is shown in the case of *State ex rel. Brown v. Bates,* 198 S. C., 430, 18 S. E. (2d), 346. The tax levy here we think was definitely set aside and allocated to health purposes within the territory embraced in Catawba and Ebenezer townships. We conclude that so much of the act as provides that "all monies now on hand to the credit of the Township Health Commission of York County, whether on deposit in banks or in the treasury of the said County, shall be used by the said County

Health Department in financing the operation of said department during the fiscal year 1943-44," is in conflict with Article 10, Section 3, of the Constitution.

The fact that this portion of the act is declared to be unconstitutional does not invalidate the statute as a whole, since this part may go out and leave the rest of it complete. The provision for turning over the township funds is separable from the remainder, and may be omitted without destroying the apparent intention of the Legislature in establishing a County Board of Health. For operating expenses of the County Board there is available or may be imposed a tax on all the property of the county.

In other exceptions the appellants say that the portion of the act requiring the turning over to the County Board of the fund in question deprives them of their property without due process of law, and denies them the equal protection of the laws, as guaranteed under Article 1, Section 5, of the Constitution; and that the pooling of this fund with the funds of the other health districts is in conflict with Article 10, Section 5, which provides that county taxes shall be uniform in respect to persons and property within the jurisdiction of the county.

Since these exceptions relate only to that portion of the act requiring the turning over of the money to the County Board, it will not be necessary for us to pass upon them, in view of our holding with reference to a diversion under Article 10, Section 3, of the Constitution.

Our conclusion, then, is that the respondents are not entitled to the writ of mandamus which they seek. This brings about a rather anomalous situation with respect to this fund of $9,620.10, since the Legislature had a perfect right to repeal the act of 1927, and has done so. The disposition of the fund, now presumably in the hands of the County Treasurer, is a matter for the lawmaking branch of the State Gov-

ernment, and no doubt a plan may be adopted whereby it can be applied to the object for which the tax was collected.

The judgment of the Circuit Court granting the writ of mandamus is reversed.

MR. CHIEF JUSTICE BAKER, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE E. C. DENNIS, ACTING ASSOCIATE JUSTICE, concur.