21306

SOUTH CAROLINA TAX COMMISSION, Appellant-Respondent, v. YORK ELECTRIC COOPERATIVE, INC., Respondent-Appellant.

(270 S. E. (2d) 626)

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr., Senior Asst. Atty. Gen. G. Lewis Argoe, Jr.* and *Staff Atty. Jackson E. Fields, Jr.,* Columbia, *for appellant-respondent.*

*C. Pinckney Roberts* and *Joseph F. Munnerlyn, Jr.,* of *Dial, Jennings, Windham, Thomas & Roberts,* Columbia, *for respondent-appellant.*

September 23, 1980.

LEWIS, Chief Justice:

The General Assembly has adopted the Uniform Disposition of Unclaimed Property Act (Section 27-17-10 *et seq.* of the 1976 Code of Laws), under which the holders of property, presumed abandoned under the statute, are required to pay or deliver to the South Carolina Tax Commission all specified abandoned property. However, Section 27-17-340 of the Act provides:

The provisions of this chapter shall not apply to any property in an amount less than twenty-five dollars.

York Electric Cooperative (York) is subject to the provisions of the foregoing Act and holds unclaimed money or cash credits for former customers in accounts each of which are less than $25.00, aggregating the sum of $10,-231.59. These accounts fall within the statutory definition of abandoned property. The Tax Commission instituted this.

action to recover these funds and York opposed the payment on the grounds that (1) the funds involved are exempt from the application of the foregoing Act because of the quoted provisions of Section 27-17-340, exempting "any property in an amount less than twenty-five dollars"; and (2) the Act is unconstitutional.

The contention of York, sustained by the lower court, is that the term "any property", as used in Section 27-17-340, means all of the abandoned property or funds held by it belonging to any one owner; therefore, since the accounts involved are *each* under twenty-five dollars, the Tax Commission is not entitled to recover.

The position of the Tax Commission, on the other hand, is that the limitation of twenty-five dollars applies to the aggregate of the property or funds held by York (the holder under the Act). In other words, the accounts of different individuals shall be added together and the aggregate figure used to determine the application of the twenty-five dollar limitation. We agree and reverse the construction placed upon the Act by the lower court.

York, in effect, argues that the term "any property in an amount less than twenty-five dollars" means any "item" or "account" less than twenty-five dollars. We find nothing in the statute to warrant such construction. In fact, when the term "any property" is construed with other relevant provisions of the Act, we find an evident legislative intent that the twenty-five dollar limitation shall apply to the aggregate amount of abandoned property or funds held and not to individual *items* or *accounts*. This is clearly indicated by the treatment of *items* in other sections.

For example, Section 27-17-130(2)(a) requires that the reports to be filed with the Tax Commission shall include "the name . . . of the owner of any property of value of ten dollars or more presumed abandoned. . . ." Section 27-17-130(2)(c) states that ". . . items of value under ten dol-

lars each may be reported in the aggregate." Section 27-17-140(3) also deals with items by providing: "The Tax Commission is not required to publish . . . any item of less than twenty-five dollars unless it deems such publication to be in the public interest." Further, Section 27-17-320 refers to ". . . accounts in amounts of twenty-five dollars and over . . .."

By reference to the foregoing sections of the Act, the conclusion is inescapable that the term "any property" could not refer to items or accounts "less than twenty-five dollars." If such was intended, then the provisions for reporting the names of owners of any property of the value of ten dollars and the provisions relating to the publication of any item of less than twenty-five dollars would be ineffective. Where the statute requires that individual *items* or *accounts* be so treated, provision is made for such treatment.

This construction gives effect to all provisions of the statute and preserves the obvious legislative intent, which is in accordance with recognized rules of construction. *Creech v. S. C. Public Service Authority*, 200 S. C. 127, 20 S. E. (2d) 645.

Since we conclude that a proper construction of the statute requires York to pay over the funds in question to the Tax Commission we reach the question of the constitutionality of the statute.

York, contends that the statute in question is unconstitutional in that it was enacted in violation of Article III, Section 17, of the South Carolina Constitution, which requires that

Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.

The South Carolina Uniform Disposition of Unclaimed Property Act was enacted as Section 14 of Part II (Per-

manent provisions) of Act No. 410, the General Appropriations Act of 1971. It is conceded that the subject of the Act in question was expressed in the title of Act 410 of 1971. So, the question presented is whether the subject of the Uniform Disposition of Unclaimed Property Act is related to the subject of Act 410 which, admittedly, is solely the making of appropriations to meet the ordinary expenses of State Government for the fiscal year 1971-1972 and to direct the manner of the expenditure of such funds. The statute here in question must relate to the subject of the General Appropriations Act in order to meet the requirements of Article III, Section 17.

The general purpose of the present statute is stated as follows in the comments to the proposals of the National Conference on Uniform Laws:

The Uniform Disposition of Unclaimed Property Act, if adopted by the States, will serve to protect the interests of owners, to relieve the holders from annoyance, expense and liability, to preclude multiple liability, and to give the adopting state the use of some considerable sums of money that otherwise would, in effect, become a windfall to the holders thereof. (8 U. L. A., page 75)

The primary purpose of the present Uniform Act is not to raise revenue, but has been correctly described as custodial in nature. It does not result in the loss of the owner's rights in the property. The State simply takes custody of the unclaimed property and remains the custodian in perpetuity, keeping records on a permanent basis because of the fact that the owner retains the right to present his claim' to the property at any time, no matter how remote. It is, therefore, not an escheat type of statute, under which the right of the owner is foreclosed and title passes to the State. 8 U. L. A. 73, 116.

The most recent case dealing with the application of Article III, Section 17, to provisions of the *State Appropria-*

*tions Act* is *Hercules, Inc. v. S. C. Tax Commission*, ——— S. C. ———, 262 S. E. (2d) 45. The test applied in that case was whether the "legislation was reasonably and inherently related to the raising and expenditure of tax monies."

Applying the test of Hercules to the present legislation, we think it violates Article III, Section 17, in that it is unrelated to the subject of Act 410, the General Appropriations Act, of which it is a part. It does not purport to transfer title to the property to the State or appropriate the funds involved to meet the 1971-72 expenses of the State Government. It is, therefore, not revenue producing but, as previously stated, simply sets forth the procedures for the transfer of *custody* of unclaimed property to the State.

Since the Uniform Disposition of Unclaimed Property Act does not relate to the subject of the General Appropriations Act for 1971-1972 (Act 410), it violates the provisions of Article III, Section 17, of the South Carolina Constitution, and is, therefore, unconstitutional.

It is argued, however, that even if the Unclaimed Property Act was unconstitutional at the time of its enactment any constitutional defect under Article III, Section 17, is now of no consequence, since it was reenacted as a part of the codification of the 1976 Code of Laws.

Section 2-13-170 of the 1976 Code of Laws provides for the enactment of the Code, and pursuant thereto the codification of the 1976 Code provided that it would constitute the general statutory law of the State as of January 1, 1978 (Section 2-17-45, Supp. 1976 Code of Laws).

The Uniform Disposition of Unclaimed Property Act, approved in 1971, was incorporated into the 1976 Code of Laws as Sections 27-17-10 through 27-17-360. Since the Unclaimed Property Act, originally adopted as a part of the permanent provisions of Act 410 of 1971, was properly

incorporated into the 1976 Code, and declared by the General Assembly to be a part of the general statutory law of the State, the constitutional objection that it originally violated Article III, Section 17, must be overruled. *Park v. Laurens Cotton Mills,* 75 S. C. 560, 56 S. E. 234; *State v. Freeland,* 106 S. C. 220, 91 S. E. 3; *Colonial Life and Accident Ins. Co. v. S. C. Tax Commission,* 233 S. C. 129, 103 S. E. (2d) 908. We are not here faced with a situation where the statute was enacted for the first time in the codification process.

We think the case of *Colonial Life v. S. C. Tax Commission, supra,* is conclusive of the present issue. In that case, a statute enacted as a part of the permanent provisions of the 1951 General Appropriations Act was unconstitutional as violative of Article III, Section 17. That statute was incorporated as a part of the codification of the 1952 Code of Laws. The question and the governing principle was thus stated:

The 1951 Act . . . was incorporated into the 1952 Code of Laws . . . . Did such codification validate this legislation, which had been invalid, for the reasons before stated, when it existed only as a part of the 1951 act? If it was properly incorporated into the 1952 Code, it became, without reference to the title of the act of which it had been a section, and therefore despite the inadequacy of that title, a part of the only general statutory law of the State. *Park v. Laurens Cotton Mills,* 75 S. C. 560, 56 S. E. 234; *Nexsen v. Ward,* 96 S. C. 313, 80 S. E. 599; *State v. Freeland,* 106 S. C. 220, 91 S. E. 3.

The Court, in *Colonial Life,* held, and proceeded upon the premise, that codification would cure a constitutional defect of title under Article III, Section 17. The issue was whether the 1951 Act had been properly included in the codification of the 1952 Code of Laws. The facts there were that the Code Commissioner made his report to the 1951

Session of the General Assembly. The statute in question was enacted at the 1951 Session and was, therefore, not included in the Code Commissioner's report of the general laws to be included in the 1952 Code. However, in adopting the 1952 Code of Laws, the General Assembly specifically included the general and permanent laws enacted during 1951, which included the statute there in question. The Court held that the 1951 Act was properly included in the 1952 codification of the laws and, since properly included, "the deficiency that had existed in the title of that act prior to the codification of that section . . . thereupon became of no consequence."

We, therefore, hold that the constitutional defect, under Article III, Section 17, in the enactment of the South Carolina Uniform Disposition of Unclaimed Property Act, was eliminated by the proper inclusion of that Act in the codification of the 1976 Code of Laws, and is a part of the general statutory law of the State.

In view of the foregoing conclusions, the other questions argued need not be considered.

We hold that the Tax Commission is entitled to judgment for the recovery of the funds sought in this action. The judgment under appeal is therefore reversed to this extent, and the cause remanded for entry of judgment accordingly. The remainder of the judgment is affirmed in result.

Reversed in part, affirmed in part, and remanded.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.