21801

Novelle MANER, Respondent, v. Darriel S. MANER, Appellant (and eleven other cases).

(296 S. E. (2d) 534)

*Jan L. Warner,* Sumter, and *James T. McLaren,* Columbia, *for petitioners.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Karen Henderson* and *Harvey Golden,* Columbia, and *E. N. Zeigler,* Florence, *for respondents.*

Oct. 20, 1982.

*Per Curiam:*

These cases are before us on motions for speedy remedy. The issues we shall address are whether the movants are entitled to a speedy appeal and, if so, whether they have been denied this right, and what relief, if any, this Court can grant to satisfy this right.

Article I, Section 9 of the South Carolina Constitution provides: "All courts shall be public, and every person shall have speedy remedy therein for wrongs sustained."

In *Rylee v. Marett,* 121 S. C. 366, 378, 113 S. E. 483, 487 (1922), this Court recognized the right to a speedy remedy could be infringed by the denial of a speedy appeal:

> Obviously the regulations which prescribe the steps to be taken and the conditions to be complied with by an appellant were intended, not only to confer a privilege upon him, but also to safeguard the judicially established rights of his adversary, by requiring the prompt and orderly prosecution of an appeal, to the end that the administration of justice through the courts should not be subject to the ancient reproach that 'justice delayed is justice denied.'
>
> A lax observance of the very reasonable regulations prescribed by statute and the rules of court for perfecting

appeals can but lead to unnecessary delay in the final disposition of causes in our courts, and thus work infringement of the constitutional guaranty (Section 15, Art. 1, Const. 1895) that 'every person shall have speedy remedy therein for wrongs sustained.' (citations omitted.)

This Court held in *State v. Lagerquist,* 254 S. C. 501, 176 S. E. (2d) 141 (1970), that Article I, Section 9 applies to civil remedies only; however, the Court recognized an accused's right of appeal was not beyond the reach of constitutional protection:

Where a right of appeal is granted, an accused must be afforded due process and equal protection of the laws in its exercise. Delay, which deprives an accused of the effective exercise of the right of appeal, may amount to a deprivation of such rights.

*State v. Lagerquist,* supra, at 506, 176 S. E. (2d) at 143.

■ We hold the right to a speedy remedy includes the right to a speedy appeal.

■ This Court is fully aware of the tremendous backlog of cases awaiting final disposition. Included in Smith's Advance Sheet No. 20, filed June 19, 1982, is "South Carolina Supreme Court Statistics as of June 1, 1982." According to this report, "Appeals now being filed in June of 1982 will probably be argued in late 1985 or early 1986." Of the twelve motions before us, only four appeals are ready to be heard by this Court.[1] The remainder await the filing of briefs and/or transcripts; therefore, these motions are premature.

In determining whether the right to a speedy appeal has been denied the movants in the four appeals ready for consideration, we must ask whether the delay in the final disposition of their causes is unnecessary. If this Court has within its grasp the means by which it can dispose of these cases in a speedier fashion, and thus relieve the Court of its backlog of appeals, then we must conclude the movants have been denied their right to a speedy appeal.

Several suggestions as to how the Court may dispose of its backlog were made by the movants and the Attorney General who was requested by this Court to submit a brief on this matter. They include (1) set additional terms of this Court or

increase the length of terms; (2) increase the use of memorandum opinions pursuant to our Rule 23; (3) increase the use of our Rule 29 allowing for submission of cases without oral argument; (4) assign circuit court judges to sit on this Court; and (5) put the Court of Appeals created by Act No. 164 of 1979 into operation.

To set additional terms or increase the terms of this Court is no solution. This Court utilizes its time and manpower to its fullest extent and does everything humanly possible to expedite final disposition of the causes on appeal. It would be simply injudicious to exercise this suggestion.

Rule 23 Memorandum Opinions are filed when a full written opinion would have no precedential value and certain other circumstances exist. This Court, therefore, is limited in its use of Rule 23 opinions. Whenever permissible, this Court already makes full use of this procedure.

This Court also makes full use of its Rule 29 allowing for submission of certain cases without oral argument. Furthermore, submission of cases without oral argument, in reality, would save this Court little time.

To assign circuit judges to sit on this Court would merely recreate the backlogs in their curcuits. Judicial reform resulted in the number of circuit judges in this State being increased from 16 to 31 and the election of 46 family court judges. While this relieved the backlog in our trial courts, it created a tremendous one in this Court. We cannot allow the Circuit Courts to suffer backlogs again nor permit backlogs to develop in the Family Courts.

We now move to discussion of whether we can and should put the Court of Appeals into operation.

Our initial determination shall be what provisions of law govern the Court of Appeals and its operation.

Article III, Section 17 of the South Carolina Constitution provides: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The purpose of Article III, Section 17 is "to prevent the General Assembly from being misled into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of proposed legislation, thereby giving them an opportunity to be heard." *Hercules,*

*Inc. v. South Carolina Tax Commission,* 274 S. C. 137, 262 S. E. (2d) 45, 47 (1980).

Article III, Section 17 should be liberally construed so as to uphold an act if practicable, *McCollum v. Snipes,* 213 S. C. 254, 49 S. E. (2d) 12 (1948); however, it should not be so liberally construed as to extend it "to such a point as to foster the abuses which its provisions are designed to prevent." *Colonial Life and Accident Insurance Co. v. South Carolina Tax Commission,* 233 S. C. 129, 103 S. E. (2d) 908, 916 (1958).

Article III, Section 17 is complied with if the title of an act expresses a general subject and if the body of it provides the means to facilitate accomplishment of the general purpose. *McCollum v. Snipes,* supra.

Act No. 164 of 1979, which created the Court of Appeals, was amended by Act No. 194 of 1979 and Act No. 517 of 1980. Both of the amendments were included in appropriations bills. The subjects of these amendments are expressed in the titles of each act, thus, the question becomes whether each act relates to only one subject.

This Court held in *South Carolina Tax Commission v. York Electric Cooperative, Inc.,* 275 S. C. 326, 270 S. E. (2d) 626 (1980), that the subject of appropriations bills is to make appropriations to meet the ordinary expenses of state government and to direct the manner of expending those funds. The test applied in *York* and *Hercules,* both of which involved appropriations acts, was whether the challenged legislation was reasonably and inherently related to the raising and expenditure of tax monies.

Applying that test to the amendments included in Act No. 194 of 1979 and Act No. 517 of 1980, relating to the Court of Appeals, we conclude they violate Article III, Section 17 in that they are not reasonably related to the subject of Act 194 and Act 517 which is to make appropriations to meet government expenses and to direct the manner of expenditure of those funds.

Finding Act Nos. 194 and 517 unconstitutional, there remains only Act No. 164 dealing with the Court of Appeals.

In *State ex rel. Riley v. Martin,* 274 S. C. 106, 262 S. E. (2d) 404 (1980), this Court declared unconstitutional several provisions of the Act creating the Court of Appeals, and left the

remaining provisions in full force and effect. This Court also declared ineligible four of the five judges elected by the General Assembly to serve on the Court of Appeals. *Riley v. Martin*, supra.

The litigants to these proceedings all agree the Court of Appeals exists. It is not presently operational because it cannot function with only one judge. Section 14-8-10 of Part IV-A of Act No. 164. Thus, we must determine if the other four judgeships can be filled.

Generally, an office created by statute comes into existence immediately upon the statute taking effect. 67 C. J. S. Officers § 13 (1978). Hence the offices of the judges of the Court of Appeals came into existence upon creation of the court on July 1, 1979.

"The effect of the annulment of an election is to declare that a vacancy exists in the office for which the election was attempted to be held, . . . ." *Killian v. Wilkins*, 203 S. C. 74, 26 S. E. (2d) 246, 248 (1943). Thus there are four vacancies on the Court of Appeals.

There are three options available by which the vacancies can be filled.

First, Section 2 of Part IV-A of Act No. 164 provides: "Notwithstanding the provisions of Part VII of this Act the judges of the court *may* be elected in the 1979 or 1980 session of the General Assembly." (Emphasis added.) We think the use of the word "may" indicates the election of judges is not restricted to 1979 or 1980, and the General Assembly retains the statutory authority for this election. The General Assembly is not presently in session. When the new session convenes in January 1983, it may implement the Act and elect the judges to fill the vacancies.

Next, since the General Assembly is not presently in session, the Governor is authorized to fill the vacancies purusant to S. C. Code Ann. § 14-8-60 (Cum. Supp. 1981) which provides "[I]f the vacancy occurs when the General Assembly is not in session, the vacancy shall be filled by the Governor and such appointee shall serve until the General Assembly elects his successor. . . ." Movants may wish to entreat the Governor to fill the vacancies. We recognize, however, that funds have not been appropriated for operation of the Court of Appeals.

Lastly, under Article V, Section 4 of the South Carolina Constitution, the Chief Justice of this Court is authorized to assign judges to sit in any court within the unified judicial system of this State. Since the Court of Appeals is part of the unified judicial system of this State, the Chief Justice of this Court may fill the vacancies by temporarily assigning circuit judges and family court judges to sit on the Court of Appeals. However, it is no answer to shift the backlog from this Court to other courts in this State. This would merely offer bandaid relief to a growing problem.

With respect to the Supreme Court, we conclude the delays in final disposition of the parties' causes are necessary. We do not turn a deaf ear to the movants or the other citizens in this State who call out for speedier final dispositions of their causes. Particularly disturbing are delays in appeals involving child custody and visitation, child support, alimony and equitable division of property. The answer to the problem facing the movants is not presently within the reach of this Court. Of these three options, only the first can provide an early and significant answer to the existing crisis. The General Assembly bears this responsibility.

Motions denied.