22025

Frank POWELL, Sheriff of Richland County, Appellant, v. RED CARPET LOUNGE, Respondent. and Frank POWELL, Sheriff of Richland County, Appellant, v. DARRELLS CLUB, Respondent. and The STATE, Appellant, v. ELLENBURG AMUSEMENT COMPANY, Respondent.

(311 S. E. (2d) 719)

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Harold M. Coombs, Jr., Scott Elliott* and *Charles H. Richardson* and *Sol. James C. Anders, for appellants-respondents and appellant.*

*John T. Gentry,* Pickens, *Clinch Heyward Belser, Robert E. Kneece* and *H. Dewain Herring, Jr.,* Columbia, and *John A. Martin,* Winnsboro, *for respondents-appellants.*

*Matthew R. Hawley, Jr.,* of *Gentry & Hawley,* Greenville, *for respondent.*

January 10, 1984.

LITTLEJOHN, Justice:

These cases on appeal from the circuit court were commenced by the Sheriff of Richland County (Appellant) against Red Carpet Lounge and Darrells Club (Respondents) to test the legality of coin-operated machines seized by the Appellant and alleged by him to constitute *per se* violations of § 52-15-10, South Carolina *Code of Laws* (1976), making them subject to confiscation and destruction under § 52-15-20.[1]

Section 52-15-10 was amended in 1982. We first consider the facts and law prior to amendment.

In contest is the legality of machines referred to as "Cute Girl", "Carolina Cup", "Draw Poker", "Black Jack", and "Bally Double Up." "Cute Girl" and "Carolina Cup" have been declared illegal and the ruling on these two machines by the circuit judge is not on appeal. "Draw Poker", "Black Jack" and "Bally Double Up" have been declared legal, inspiring this appeal on the part of the Sheriff. It has been stipulated that the claim of illegality is based solely on the existence and possession of the machines, and there is no contention of illegal use. Accordingly, the sole issue for determination is the legality or the illegality of the three types of machines referred to above without regard to their use.

Section 52-15-10 (1976), entitled "Types of Machines and Devices Prohibited by Law", declares certain coin-operated machines illegal. It exempts, however, certain machines as follows:

> But the provisions of this section shall not extend to coin-operated nonpayout pin tables with free play feature. . . .

Section 16-19-60, enacted in 1975, reads as follows:

> § 16-19-60. COIN OPERATED NONPAYOUT MACHINES WITH FREE PLAY FEATURE ARE NOT ILLEGAL.
>
> Nothing in §§ 16-19-40 or 16-19-50 shall extend to coin operated nonpayout machines with a free play feature; *provided*, that nothing herein shall authorize the licensing, possession or operation of any machine which disburses money or property to the player.

---

[1] The third case enumerated arose in Anderson County. Our ruling on the Richland County cases will be dispositive of it, also.

The exemption in § 52-15-10 specifically refers to "pin tables", whereas § 16-19-60 only refers to "coin operated nonpayout machines with a free play feature".

■ We agree with the Respondent that these two sections are in *pari materia* and must be construed together so as to give proper meaning and effect to each. Statutes in apparent conflict which address similar subject matter must be read together and reconciled if possible so as to give meaning to each and to avoid an absurd result. *State ex rel. McLeod v. Montgomery*, 244 S. C. 308, 136 S. E. (2d) 778 (1964); *Stone & Clamp, General Contractors v. Holmes*, 217 S. C. 203, 60 S. E. (2d) 231 (1950).

The code sections referred to above were the controlling law as of the time these actions were commenced in 1981. While the order of the lower court declaring the coin-operated machines legal was on appeal to this court, the General Assembly, in 1982, in the General Appropriation Act, amended § 52-15-10, as quoted herein above to read as follows:

> [B]ut the provisions of this section shall not extend to coin operated nonpayout pin tables, *in-line pin games and video games* with free play feature.... (Emphasis added.)

In light of the statutory amendment, the cases were remanded to the circuit court for the purpose of having that court indicate what effect, if any, the amendment had on disposition of the issues involved. The circuit judge ruled, first, that the amendment did not violate Article III, Section 17 of the Constitution of South Carolina, which requires that subject matter of the proposed law be set out in the title of the act and that an act relate to but one subject; and, second, that the act is not violative of Article XVII, Sections 7 and 8, which relate to prohibition against lotteries.

All matters, including the rulings upon remand, are now before this court.

While we are of the view that the order of the circuit judge was correct, independent of the amendment, the legislature has now settled any debate that might arise relative to the legality of the machines involved.

■ We agree with the circuit court which found that Article III, Section 17 should be liberally construed so as to uphold an act if practicable. The amendment related

not only to a definition of the machines involved, but also dealt with license fees to be collected, all of which is germane to the matter of appropriating money and raising revenue.

We are also of the opinion that the circuit judge correctly held that the statutes regulating coin-operated machines are not violative of Article XVII, Section 7 and/or Section 8. While these machines, like dice and decks of cards, might be used for the purpose of gambling, there is no contention in this proceeding that the machines were used for that purpose or other illegal use. A lottery as contemplated by the constitution, simply is not involved.

Argument to the effect that these are gambling machines prohibited under the lottery provisions of the constitution because elements of chance and skill are involved is without merit.

The orders of the circuit courts are, hereby,

Affirmed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.