## 24415

Harriet KEYSERLING, Sierra Club, League of Women Voters of South Carolina, South Carolina Wildlife Federation, South Carolina Coastal Conservation League, Energy Research Foundation, and Justin Stephen McMillan , Petitioners v. David M. BEASLEY, as Governor of the State of South Carolina, David H. Wilkins, and Speaker of the House of Representatives, Robert L. Peeler, Lt. Governor and President of the Senate, and The State of South Carolina, Respondents. John W. Drummond, in his capacity as President Pro Tempore of the South Carolina Senate and on behalf of the Senate, Intervenors.

(470 S.E. (2d) 100)

Supreme Court

*James S.Chandler, Jr.,* of the *South Carolina Environmental Law Project,* Pawleys Island; *W. Dennis Chamberlain,* Greenville; *Robert Guild,* Columbia; *Daryl G. Hawkins* of *Lewis, Babcock & Hawkins,* Columbia; *Joseph S. Lyles,* of *Howard, Howard, Francis & Reid,* Greenville; *Gary W. Poliakoff,* of *Poliakoff, Poole & Associates,* Spartanburg; and *Phillip L. Fairbanks,* of *Fairbanks & Lindsay,* Beaufort, all *for petitioners.*

*Attorney General Charles Molony Condon, Deputy Attorney General Treva G. Ashworth, Assistant Deputy Attorney General J. Emory Smith,* Columbia, *for respondents Governor, Speaker, Lt. Governor* and *State.*

*Michael N. Couick, W. Hogan Brown,* and *Paula G. Benson,* Columbia, *for intervenor John W. Drummond, President Pro Tempore, South Carolina Senate.*

Heard Mar. 20, 1996.

Decided Apr. 22, 1996.

WALLER, Justice:

We accepted this matter is our original jurisdiction, not to decide whether the Barnwell landfill should remain open or should close, but solely to determine whether sections B & D of Part II, section 79 of the 1995 Appropriations Act violate Article III, § 17 of the South Carolina Constitution.[1] We hold that they do not.

## FACTS

The Southeastern Low-Level Radioactive Waste Management Compact (Southeastern Compact) was adopted by the General Assembly in 1982. It was intended to address the problem of disposal of low-level radioactive waste on a regional basis. S.C. Code Ann. § 48-47-10 et seq. (1987). Under th compact, South Carolina was to serve as the initial host facility, with the Barnwell landfill being the only southeastern waste facility. S.C. Code Ann. §§ 48-47-30, 48-47-80 (1987). The Barnwell facility was originally scheduled to cease accepting out-of-state waste in January, 1993, but the date was extended to January, 1996.[2] S.C. Code Ann. §§ 48-48-80 (Supp. 1994).

In the 1995 Appropriations Act, the Legislature removed South Carolina from the Southeastern Compact and eliminated the requirement that the Barnwell Facility cease accepting out-of-state waste in January, 1996. By Act No. 145,

---

[1] "Every Act or resolution having the effect of law shall relate to but one subject, and that shall be expressed in the title." S.C. Const. art. III, § 17.

[2] North Carolina, which was scheduled to be the next host state for the southeastern compact, has not to date completed its disposal facility.

Part II, § 79, 1995 Acts 1444, the Legislature amended Title 48, Chapter 48 to: (A) impose a tax of two hundred thirty-five dollars per cubic foot on low-level radioactive waste disposed of in this State (revenues to be used in part for the South Carolina Educational Assistance Endowment Fund); (B) create a "Low-Level Radioactive Waste Compact Negotiating Committee" to establish a new compact; (C) require forty dollars per cubic foot of revenues generated by the facility from Southeastern generators be allocated to the General Fund; and (D) repeal Title 48, Chapter 47 (the Southeastern Compact).

Petitioners raise no challenge to Subsections A & C above but contend Subsections B & D violate the "One-Subject" provision of Article III, § 17 of the South Carolina Constitution in that they do not relate to revenue-raising measures. We disagree.

## DISCUSSION

We emphasize, at the outset, that the determination of the social and economic desirability of the Barnwell landfill is not the issue before this court. We do not sit as a super legislature to second guess the wisdom or folly of decisions of the General Assembly. As we must, we follow the law and decisions heretofore set forth in this state. Doing so, we reach the inevitable conclusion that the "One-Subject" provision of Article III, § 17 was not violated in this case.

The purpose of Article III, § 17 is to prevent the General Assembly from being misled into passing bills containing provisions not indicated in their titles, and to apprise the people of the subject of proposed legislation and thus give them an opportunity to be heard if they so desire. *Colonial Life Ins. Co. v. South Carolina Tax Comm'n*, 233 S.C. 129, 103 S.E. (2d) 908 (1958); *see also Carll v. South Carolina Jobs Economic Dev. Auth.*, 284 S.C. 438, 327 S.E. (2d) 331 (1985). It is to be liberally construed so as to uphold the Act if practicable. *McCollum v. Snipes*, 213 S.C. 254, 49 S.E. (2d) 12 (1948). Doubtful or close cases are to be resolved in favor of upholding as Act's validity. *Alley v. Daniel*, 153 S.C. 217, 150 S.E. 691 (1929). Article III, § 17 does not preclude the legislature from dealing with several branches of one general subject in a single act. *Deloach v. Scheper*, 188 S.C. 21, 198

S.E. 409 (1938). It is complied with if the title of an act expresses a general subject and the body provides the means to facilitate accomplishment of the general purpose. *McCollum, supra.* In regards to enactment of measures through a general appropriations act, Article III, § 17 is complied with if the challenged legislation reasonably and inherently relates to the raising and spending of tax monies. *Hercules v. South Carolina Tax Comm'n,* 274 S.C. 137, 262 S.E. (2d) 45 (1980).

Here, Petitioners contend subsections B and D are not ■ reasonably and inherently related to appropriations.

We disagree. Subsection B creates a committee to establish a new compact and gives that committee authority to negotiate contracts with other states and individual generators, and to provide for an appropriate host fee to be paid. Further, subsection D, repealing the Southeastern Compact, is necessary to permit the Barnwell Landfill to continue accepting out-of-state waste beyond January, 1996, thereby generating further revenues. Without these sections, Barnwell will not generate the amount of revenues sought by the General Assembly. Furthermore, subsections B & D are integral to section 79 in that they amend and repeal existing laws necessary to effectuate the legislative intent expressed in subsections A & C. The Legislature was not required to enact separate measures to achieve this result. *Deloach, supra.* Accordingly, we find that subsections B & D are clearly related to the raising and spending of revenues and therefore comply with Article III, § 17.[3]

We have repeatedly upheld enactment of measures through appropriations acts in cases analogous to the present situation. *See e.g. Powell v. Red Carpet Lounge,* 280 S.C. 142, 311 S.E. (2d) 719 (1984) (amendment defining "coin-operated non-payout machines" for purposes of determining legality is germane to matter of appropriating money and raising revenue

---

[3] Petitioners urge that the action of the Legislature in appending this measure to the Appropriations Act constitutes "logrolling" or "bobtailing." *See Arthur v. Johnston,* 185 S.C. 324, 194 S.E. 151 (1937) (purpose of Article III, § 17 is to prevent fraud on the Legislature by "hodgepodge" or "logrolling" methods.) The appendix to Petitioners' reply brief aptly demonstrates that the matter was, in fact, before the General Assembly and that a number of members expressed their opposition to the Barnwell matter. In fact, a number of legislators voted against the appropriations act for that reason. Accordingly, it is apparent the Legislature was well aware of section 79 prior to adopting the Appropriations Act.

where statute also provided for collection of license fees); *Hercules v. South Carolina Tax Comm'n*, 274 S.C. 137, 262 S.E. (2d) 45 (1980) (statute suspending statute of limitations for collection of tax revenues reasonably and inherently related to appropriations); *Caldwell v. McMillan*, 224 S.C. 150, 77 S.E. (2d) 798 (1953) (statute allowing highway department to lease space in its administrative offices for a restaurant sufficient under Article III, § 17 since it "increases the efficiency of the State's business" by making meals available to state employees); *State ex rel. Roddey v. Byrnes*, 219 S.C. 485, 66 S.E. (2d) 33 (1951) (issuance of bonds relevant to state finances); *Crouch v. Benet*, 198 S.C. 185, 17 S.E. (2d) 320 (1941) (issuance of bonds to build additional state hospital buildings and training school closely related to fiscal affairs of the state).

A review of cases in which this Court has found a violation of Article III, § 17 readily demonstrates the distinction between the present measure and those invalidated. *See, e.g., Ex parte Georgetown Water & Sewer District*, 284 S.C. 466, 327 S.E. (2d) 654 (1985) (measure allowing voters in special purpose district to decide method of electing district board and determining whether board would have fiscal autonomy or be subject to approval of county governing board was not related to spending or raising of tax dollars); *Maner v. Maner*, 278 S.C. 377, 296 S.E. (2d) 533 (1982) (amendments to act which created Court of Appeals not related to appropriations); *South Carolina Tax Comm'n v. York Elec. Coop.*, 275 S.C. 326, 270 S.E. (2d) 626 (1980) (Uniform Distribution of Property Act merely gave state custody of unclaimed property; it did not transfer title of such property to state and was therefore not related to appropriations). None of these measures in any way impacted upon the raising of revenues.

Finally, we reject Petitioners' claim that we should read the provisions of Section 79 in isolation, requiring each provision to relate directly to appropriations. The simple answer to this contention is that it is contrary to prior case law of this state. *Powell, Hercules, Caldwell, supra.* In any event, as noted previously, subsections B and D are inherently related to appropriations matters as they are necessary to effectuate the legislative intent in allowing the landfill to remain open to out-of-state waste in order to generate further revenue.

We reiterate that it is not the province of this Court to determine the sagacity of leaving open the Barnwell facility; our sole duty is to interpret and apply prior case law of this State. Applying such precedent to this matter, it is inescapable that Parts B & D of Section 79 are germane to the subject of appropriations. Accordingly, we find their inclusion in the 1995 appropriations Act does not violate the one subject provision of Article III, § 17.

Judgment for respondents.

FINNEY, C.J., MOORE and BURNETT, JJ., and Acting Associate Justice GEORGE T. GREGORY, JR., concur.