# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Public Interest Foundation and Edward D. Sloan, Jr,. individually, and on behalf of all others similarly situated, Petitioners,

v.

James H. "Jay" Lucas, as Speaker of the S.C. House of Representatives, Henry D. McMaster, as President of the S.C. Senate, and The State of South Carolina, Respondents.

Hugh K. Leatherman, Sr., in his capacity as President Pro Tempore of the South Carolina Senate, Intervenor.

Appellate Case No. 2015-001443

---

## IN THE ORIGINAL JURISDICTION

---

Opinion No. 27638
Heard March 22, 2016 – Filed May 18, 2016

---

## PROVISO STRICKEN

---

James G. Carpenter, Esquire, of Carpenter Law Firm, PC, of Greenville, for Petitioners.

Michael J. Anzelmo, and Blake Terence Williams, both of Nelson Mullins Riley & Scarborough; Richard L. Pearce, Patrick G. Dennis, and Charles Fennell Reid, all

of Columbia, for Respondent James H. "Jay" Lucas, Jr.;
Attorney General Alan McCrory Wilson and Deputy
Solicitor General J. Emory Smith, Jr., both of Columbia,
for Respondents State of South Carolina and Lieutenant
Governor Henry D. McMaster.

Kenneth M. Moffitt and Edward Houseal Bender, both of
Columbia, for Intervenor Hugh K. Leatherman, Sr.

---

**CHIEF JUSTICE PLEICONES:**  We agreed to hear this constitutional challenge to the 2015-16 Appropriations Act in our original jurisdiction.[1]  Petitioners contend, and we agree, that the inclusion of Proviso 84.18[2] in that act violates the "one subject" requirement found in S.C. Const. art. III, § 17.  As explained below, we hold that where the general appropriations act contains a section that is not germane to the purpose of that act, i.e., one that does not "reasonably and inherently relate to the raising and spending of tax monies," that section may be excised by a court.  In so doing, we modify our holding in *Am. Petroleum Inst. v. South Carolina Dep't of Rev.*, 382 S.C. 572, 677 S.E.2d 16 (2009).[3]

---

[1] The dissent would hold that whether the 2015-16 Appropriations Act violates the State Constitution is too insignificant a matter to warrant this Court's exercise of its original jurisdiction, and would therefore dismiss the petition.  Moreover, the dissent would base this dismissal on petitioners' motives, and not on the merits, thereby permitting petitioners to refile in circuit court.  The dissent fails to appreciate that were this case to be decided in the circuit court, that court would be bound by stare decisis and would be required to strike the Act in its entirety.  *Am. Petroleum Inst. v. South Carolina Dep't of Rev.*, 382 S.C. 572, 677 S.E.2d 16 (2009).  The circuit court could not alter that remedy any more than can the petitioners by their pleadings. The consequences of such a ruling would call into question the ability of the state to meet its fiscal obligations.  Unlike the dissent, we find that the public interest requires we exercise our original jurisdiction to decide this case in an expeditious manner.  Rule 245, SCACR; *See Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 753 S.E.2d 846 (2014).

[2] 2015 Act No. 91, Part 1B, § 84, Proviso 84.18.

[3] The dissenting opinion maintains that we can avoid deciding a constitutional issue here by simply proclaiming the Proviso invalid.  We disagree.  The Proviso,

## FACTS

South Carolina Code Ann. § 57-1-410 (Supp. 2015) provides for the appointment of an administrative official denominated the Secretary of Transportation. This statute, enacted as § 5 of 2007 Act No. 114, reads:

> The Governor shall appoint, with the advice and consent of the Senate, a Secretary of Transportation who shall serve at the pleasure of the Governor. A person appointed to this position shall possess practical and successful business and executive ability and be knowledgeable in the field of transportation. The Secretary of Transportation shall receive such compensation as may be established under the provisions of Section 8-11-160 and for which funds have been authorized in the general appropriations act.

The next section of 2007 Act No. 114 provided:

> Unless extended by subsequent act of the General Assembly, the Governor's authority to appoint the Secretary of the Department of Transportation pursuant to Section 57-1-410 terminates and is devolved upon the Department of Transportation Commission effective July 1, 2015. All other provisions regarding the rights, powers, and duties of the secretary shall remain in full force and effect.
>
> 2007 Act No. 114, § 6.

Proviso 84.18 purports to suspend the 2015 termination/devolution provision of 2007 Act No. 114, § 6, for the fiscal year, i.e., until June 30, 2016, thus leaving intact the appointment authority given to the Governor in § 5.

---

standing alone, is not invalid. Rather the issue before the Court is whether the inclusion of the Proviso in the Appropriations Act renders the Act violative of S.C. Const. art. III, § 17. That is the constitutional issue we cannot "decline to reach." Once the Act is found to violate the Constitution, the question of the appropriate remedy for that constitutional violation is necessarily before the Court.

Petitioners seek a declaration that the inclusion of Proviso 84.18 in the appropriations act violates art. III, § 17. This section of our state constitution provides:

> § 17. One subject.
>
> Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.

Article III, § 17 has three objectives:

> "(1) to apprise the members of the General Assembly of the contents of an act by reading the title; (2) to prevent legislative 'log-rolling',[4] and (3) to inform the people of the State of the matters with which the General Assembly concerns itself." *Am. Petroleum Inst. v. South Carolina Dep't of Revenue*, 382 S.C. 572, 576, 677 S.E.2d 16, 18 (2009).
>
> *Sea Cove Dev., LLC v. Harborside Comm. Bank*, 387 S.C. 95, 101, 691 S.E.2d 158, 161 (2010).

"Log-rolling" is defined as a "legislative practice of including several propositions in one measure . . . so that the Legislature . . . will pass all of them, even though these propositions may not have passed if they had been submitted separately." *Am. Petroleum* at 577, 677 S.E.2d at 18, citing Blacks Law Dictionary 849 (7th ed. 1999).

The crux of petitioners' art. III, § 17 challenge is that the subject matter of Proviso 84.18, suspension of the appointment power found in 2007 Act No. 114, § 6, is neither germane to, nor does it provide the means, methods, or instrumentalities for, effectuating the purpose of the general appropriations act, i.e. the raising or expenditure of revenue. *See, e.g., Hercules, Inc. v. S.C. Tax Comm'n*, 274 S.C. 137, 141-2, 262 S.E.2d 45, 47-48 (1980). As such, petitioners argue that the

---

[4] Other terms used for this practice are 'bobtailing,' *see, e.g., Keyserling v. Beasley*, 322 S.C. 83, 470 S.E.2d 100 (1996), and 'hodgepodge.' *See, e.g., Arthur v. Johnston*, 185 S.C. 324, 194 S.E. 151 (1937).

inclusion of Proviso 84.18 in the 2015-16 Appropriations Act violates S.C. Const. art. III, § 17.  We agree.

The Court has decided a number of cases involving a challenge to a provision of the annual appropriations act as violative of art. III, § 17.  In the following cases, the "log-rolling" challenge was denied because the challenged section was found to be germane to the purpose of the act:

1. *Giannini v. S.C. DOT*, 378 S.C. 573, 664 S.E.2d 450 (2008) (reenactment of Tort Claims Act Caps are reasonably and inherently related to raising and spending of tax monies).

2. *Town of Hilton Head Island v. Morris*, 324 S.C. 30, 484 S.E.2d 104 (1997) (requirement that local governments remit real estate transfer fees to the state).

3. *Keyserling v. Beasley*, 322 S.C. 83, 470 S.E.2d 100 (1996) (provisions creating a committee to negotiate new contracts and fees for waste disposal and to repeal an earlier law thereby allowing landfill to continue to accept out-of-state waste and associated fees).

4. *State Farm Mut. Auto. Ins. Co. v. Smith*, 281 S.C. 209, 314 S.E.2d 333 (1984) (insurance commission to collect a fee/tax from automobile insurers).

5. *Powell v. Red Carpet Lounge*, 280 S.C. 142, 311 S.E.2d 719 (1984) (altering definition of machines subject to licensing fee).

6. *Hercules, Inc. v. S.C. Tax Comm'n*, 274 S.C. 137, 262 S.E.2d 45 (1980) (suspension of tax assessment statute of limitations).

7. *Caldwell v. McMillan*, 224 S.C. 150, 77 S.E.2d 798 (1953) (proviso permitting Highway Department to build a kitchen and lease the space to a restaurateur).

8. *State ex rel. Roddey v. Byrnes*, 219 S.C. 485, 66 S.E.2d 33 (1951) (issuance of state bonds; school construction; sales and use tax).

9. *Crouch v. Benet*, 198 S.C. 185, 17 S.E.2d 320 (1941) (bonds to build additional facilities).

In the following cases, however, provisions of the appropriations act were found to violate art. III, § 17 because their content was not germane to the raising or spending of tax monies:

1. *Ex parte Georgetown Water & Sewer Dist.*, 284 S.C. 466, 327 S.E.2d 654 (1985) (permitting referendums in special purpose districts to decide method of electing members and/or nature of budget).

2. *Maner v. Maner*, 278 S.C. 377, 296 S.E.2d 533 (1982) (amendments to act creating the Court of Appeals).

3. *S.C. Tax Comm'n v. York Elec. Coop.*, 275 S.C. 326, 270 S.E.2d 626 (1980) (Uniform Disposition of Unclaimed Property Act giving state custody of certain unclaimed property).

We agree with petitioners that *Ex parte Georgetown*, *supra*, *Maner*, *supra*, and *York Elec. Coop.*, *supra*, dictate that we hold that the inclusion of Proviso 84.18 in the 2015-16 Appropriations Act violates the log-rolling prohibition found in art. III, § 17. The provision at issue in *Ex parte Georgetown*, like Proviso 84.18, was concerned with the manner in which the governing body of a state entity would be selected. Like Proviso 84.18, *Maner* involved administrative, not monetary matters. Finally, in *York Elec. Coop.*, the Court found the Unclaimed Property Act was not revenue providing, but instead merely procedural. We find that the suspension of the devolution of the Secretarial selection authority from the Governor to the Commission is a matter of administration and procedure involving the method of choosing an official.

Intervenor Leatherman argues, however, that because the Secretary necessarily has some discretion in making significant fiscal decisions on behalf of DOT, any

legislation touching on the selection of the individual vested with this authority is properly included in the appropriations act.  Article III, § 17, however does not sweep this broadly: "The test applied in *York* and *Hercules*, both of which involved appropriations acts, was whether the challenged legislation was reasonably and inherently related to the raising and expenditure of tax monies."  *Maner*, 278 S.C. at 382, 296 S.E.2d at 536.  The right to appoint the Secretary, whatever that officer's authority to expend agency funds, does not meet this test.  The suspension of the appointment authority in Proviso 84.18 does not "reasonably and inherently" relate to the raising or spending of tax money and is therefore not germane to the purpose of the appropriations act.

Respondent Lucas takes a different approach and suggests a new analytical approach to art. III, § 17 challenges to legislation contained in an appropriations act.  He suggests that the scope of the 2015-16 Appropriations Act was expanded beyond mere fiscal concerns by the words "the operation of state government" in its title.  The full title of the Appropriations Act is:

> **AN ACT TO MAKE APPROPRIATIONS AND TO PROVIDE REVENUES TO MEET THE ORDINARY EXPENSES OF STATE GOVERNMENT FOR THE FISCAL YEAR BEGINNING JULY 1, 2015, TO REGULATE THE EXPENDITURE OF SUCH FUNDS, AND TO FURTHER PROVIDE FOR THE OPERATION OF STATE GOVERNMENT DURING THIS FISCAL YEAR AND FOR OTHER PURPOSES.**

First, we are not convinced that the title is susceptible of a reading that separates "operation of state government" from fiscal issues.  Further, if Respondent Lucas were correct, and 2015 Act No. 91 embraces both appropriations and the entire "operation of state government," it would *ipso facto* violate the "one subject" requirement of art. III, § 17.

Respondent Lucas next argues the Court should not read Proviso 84.18 "in isolation" but rather in the context of all of Proviso 84, citing *Keyserling*, *supra*.  We find his reliance on this decision is misplaced.  *Keyserling* was a challenge to two parts of a section of the 1995 Appropriations Act.  *See* 1995 Act No. 145, Part 11, § 79.  Section 79, which addressed the Barnwell low-level radioactive waste landfill, contained four parts:

(A) added a statute imposing a tax on low-level out-of-state waste;

(B) amended a statute to create a committee to negotiate a new waste disposal compact, with the committee authorized to negotiate new fees;

(C) required a part of all revenues generated by the landfill be remitted to the General Fund; and

(D) repealed a statute which established the original waste disposal compact.

Subsections (B) and (D) were challenged as not related to revenue raising and therefore violative of art. III, § 17. The Court rejected the challenges, holding that (B) was germane as it authorized a committee to negotiate new fees and that (D), by repealing the existing compact, permitted the landfill to continue to accept out-of-state waste, thereby generating funds while the new compact and new fees were negotiated under (B). The Court concluded: "Without these sections, [the landfill] will not generate the amount of revenues sought by the General Assembly." *Keyserling* at 87, 470 S.E.2d at 102.

Respondent Lucas relies on language from *Keyserling* which "rejects Petitioners' claim that we should read the provisions of Section 79 in isolation, requiring each provision to relate **directly** to appropriations." *Id*. at 88, 470 S.E.2d at 103. (emphasis supplied). In *Keyserling*, subsection (B) did not **directly** relate to appropriations as it authorized the commission to negotiate the new fees, but did not itself set that amount, and subsection (D) did not **directly** set a fee, but by deleting a statute, permitted a fee to continue to be collected. While neither section **directly** raised revenue, both were nonetheless "reasonably and inherently" related to revenue raising, and were necessary to make the whole of Section 79 effective. Other examples of provisions in appropriations acts that did not **directly** relate to revenue raising or spending, but were nonetheless found to be reasonably and inherently related to this purpose, are: (1) a provision that defined the machines subject to a license fee but did not itself set that fee, *Powell*, *supra*; (2) a proviso that suspended a statute of limitations so as to permit a tax assessment to continue to be collected, *Hercules*, *supra*; and (3) a subsection which authorized the

building of a cafeteria and a contract with a restaurateur, without directing the amount that could be spent. *Caldwell*, *supra*.

While a provision in the appropriations act need not **directly** relate to spending revenue, *Keyserling*, *supra*, it must "reasonably and inherently" relate to this purpose. *Hercules*, *supra*. Moreover, the "viewed in isolation" language from *Keyserling* is addressed to a "stand-alone" section of the appropriations act concerned with one isolated issue: adding, deleting, and amending statutes to permit the continued operation of a revenue-generating landfill. Here, the challenge is to a single proviso included in a section of the appropriations act containing a large agency's entire budget. We find "the stand alone" passage in *Keyserling* cited by Respondent Lucas does not apply so as to make Proviso 84.18 germane to the Appropriations Act. Moreover, if Respondent Lucas were correct, then the appropriations act could include any item, however tangentially related to an agency's operations, so long as that item were included in that agency's budget section. Such a rule would effectively exempt the appropriations act from the ambit of art. III, § 17. The language of the constitution and our precedents, however, require that the general appropriations act, like every other "Act or resolution having the force of law" relate only to "one subject." S.C. Const. art. III, § 17.

The issue is whether Proviso 84.18, suspending the termination of the Governor's appointment power, is reasonably and inherently related to the raising and spending of tax monies. *See Town of Hilton Head*, *supra*, 324 S.C. at 35, 484 S.E.2d at 107. We hold that it is not, and thus its inclusion in the Appropriations Act renders that Act violative of art. III, § 17. *See Ex parte Georgetown*, *supra*; *Maner*, *supra*; *York Elec. Coop.*, *supra*.

Having determined that the inclusion of Proviso 84.18 in the Appropriations Act violates art. III, § 17, the next question is the appropriate remedy. Prior to 2009, the Court took the view that when certain provisions of an act violated the "one subject" rule, the Court could strike down the offending provision(s) and leave standing the germane part of the legislation. This remedy has been applied in appropriations act challenges. *E.g.*, *Ex parte Georgetown*, *supra*. In 2009, however, in a case not involving the appropriations act, we held that if the constitutional "one subject" requirement were violated, then the entire act must be struck down. *Am. Petroleum*, *supra*.

Pursuant to *Am. Petroleum*, we could find that because Proviso 84.18 violates art. III, § 17, we must strike the entire 2015-2016 Appropriations Act.  As explained below, however, we find this drastic remedy is not necessary when the offending language is included in the general appropriations act.

It is well settled that the purpose of the appropriations act is the raising and spending of revenue.  *E.g.*, *Crouch*, *supra* (1941); *State ex rel. Roddey*, *supra*, (1951).  The intent of the General Assembly in enacting an appropriations act is clear and we would not be in the position of usurping the General Assembly's prerogative to determine an act's "proper subject" when the legislation at issue is the appropriations act since the only items which are germane to that subject are those that "reasonably and inherently relate to the raising and spending of tax monies."  *See Plowden v. Beattie*, 185 S.C. 229, 240, 193 S.E. 651, 656 (1937) ("The appropriations act is the one "big piece" of legislation to occupy the time of the legislature at each session of the General Assembly, and is probably the most studied bill . . . .").  Accordingly, we modify our decision in *Am. Petroleum*, *supra* and now hold that when deciding an art. III, § 17 challenge to the annual appropriations act, we have the authority to excise any provision that is not germane to fiscal issues.

## CONCLUSION

We hold that the inclusion of Proviso 84.18 in 2015 Act No. 91 violates art. III, § 17, and order that Proviso 84.18 be stricken from the Act.  As a result, the authority to appoint the Secretary of Transportation devolved from the Governor to the Department of Transportation Commission effective July 1, 2015 pursuant to 2007 Act No. 114, § 6.

**PROVISO STRICKEN**.

**BEATTY, KITTREDGE and HEARN, JJ., concur.  FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I respectfully do not join the majority opinion. In my view, this case does not present a question of sufficient public interest to justify this Court hearing it in our original jurisdiction. *See Key v. Currie*, 305 S.C. 115, 116, 406 S.E.2d 356, 357 (1991) ("Only when there is an extraordinary reason such as a question of significant public interest or an emergency will this Court exercise its original jurisdiction."). Though this Court already granted the petition to hear the case, the Court has dismissed such petitions in the past when it became clear the case was not appropriate for original jurisdiction. *See, e.g.*, *Milton v. Richland Cty.*, Op. No. 2015-MO-046, slip op. at 5 (S.C. Sup. Ct. filed August 5, 2015) (after finding "Petitioner has failed to demonstrate a justiciable controversy," the Court "dismiss[ed] this matter in our original jurisdiction as it is not appropriate for our review"). I would dismiss the petition.

This case is a companion to one in which the same petitioners contend the transfer of authority to appoint the Secretary of Transportation—from the Governor to the Department of Transportation—is unconstitutional under the separation of powers requirement set forth in article I, section 8 of the South Carolina Constitution. In the companion case, Petitioners seek to prevent the transfer of authority from occurring, contending the authority must remain with the Governor because the Department of Transportation is an executive branch department. In this case, however, striking Proviso 84.18 of the 2015-2016 Appropriations Act[5] accelerates that transfer of authority. Thus, the relief Petitioners seek in this case is inconsistent with the relief they seek in the companion case. By granting relief, we bring about the very event Petitioners seek to prevent in the companion case—the transfer of authority to appoint the Secretary away from the Governor.

However, if Proviso 84.18 is effective, the transfer has not yet occurred, and Petitioners' separation of powers challenge in the companion case is not ripe for judicial determination. Thus, by granting Petitioners the relief they seek here, we enable them to seek relief in the companion case that would otherwise not be ripe. That is what this case is about. While I do not suggest there is anything improper in Petitioners' motives, Petitioners clearly did not bring this case to accelerate the timing of an event they contend is unconstitutional. Rather, this case was filed only to prevent a finding in the companion case that the challenge to that transfer is

---

[5] Act No. 91, 2015 S.C. Acts 429, 916.

not ripe. In my opinion, acknowledging this assists us in understanding the controversy before us and better enables us to evaluate the public interest at stake.

In an unpublished opinion in the companion case—issued simultaneously with this opinion—we deny without explanation the relief Petitioners seek there. *S.C. Pub. Interest Found. v. Rozier*, Op. No. 2016-MO-019 (S.C. Sup. Ct. filed May 18, 2016). In that opinion, the Court states only, "After careful consideration of the briefs, and after oral argument, we find no merit to petitioners' challenge and therefore decline to issue the declaratory relief they seek." *Rozier*, slip op. at 2. Therefore, this Court issues its opinion in this case for the purpose of determining a companion case is ripe, so the Court may deny relief in the companion case without any explanation. This is not the type of "significant public interest" that warrants this Court's exercise of its original jurisdiction.

As to the merits of the majority opinion, I do not agree that this Court should adopt a new rule in this case that "when deciding an art[icle] III, [section] 17 challenge to the annual appropriations act, we have the authority to excise any provision that is not germane to fiscal issues." Such a broad proclamation of law is not necessary to resolve the controversy before the Court. *See generally In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) (reciting "this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required"); *Fairway Ford, Inc. v. Cty. of Greenville*, 324 S.C. 84, 86, 476 S.E.2d 490, 491 (1996) (reciting the "firm policy of declining to reach constitutional issues unnecessary to the resolution of the case before us"). *See also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51, 128 S. Ct. 1184, 1191, 170 L. Ed. 2d 151, 161 (2008) (reciting "the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied'" (quoting *Ashwander v. TVA*, 297 U.S. 288, 346-347, 56 S. Ct. 466, 483, 80 L. Ed. 688, 711 (1936) (Brandeis, J., concurring))).

The new rule the Court adopts is not necessary because this case poses a narrow question: whether the transfer of authority to appoint the Secretary occurred on July 1, 2015—as originally contemplated by section 6 of Act 114 of 2007—or has been delayed to July 1, 2016—as provided in Proviso 84.18. The question can be further narrowed into two sub issues: (1) whether Petitioners have proven a violation of article III, section 17, and (2) if so, the remedy this court should impose for the violation. The majority makes this point, stating, "Once the Act is

found to violate the Constitution, the question of the appropriate remedy for that constitutional violation is necessarily before the Court." *See supra* note 3. Here, the majority determined a constitutional violation occurred. Turning then to remedy, the "appropriate remedy for that constitutional violation" should be narrowly tailored to fit the question before the Court. In my opinion, the Court may fully answer the question before it and completely resolve the controversy Petitioners presented by merely stating the Proviso did not extend the transfer of authority. It is not appropriate to consider the remedy of invalidating the entire 2015-2016 Appropriations Act because answering that broad legal question is not necessary to resolve the narrow controversy before us.

Moreover, Petitioners' complaint does not seek a declaration as to the constitutionality or enforceability of the entire Appropriations Act. Generally, if a plaintiff asks only for a narrow remedy, there is no reason for a court to decide whether to grant a more drastic remedy. Petitioners ask in their complaint only that we "declare that Proviso 84.18 violates [article III, section 17], and therefore is null and void."[6] Thus, it is not necessary in this case to decide whether the remedy should include a declaration that the entire Appropriations Act is unconstitutional. No party has requested such a remedy, and such a remedy is not necessary to resolve the controversy before us. Rather, to answer the very narrow question before the Court in this case, we need make only this very narrow ruling—because the Proviso violates the one-subject limitation, it is not effective to delay the transfer of authority to appoint the Secretary of Transportation.

The importance of the restraint I propose is illustrated by what the majority considers the necessity to "modify our decision" of only seven years ago in *American Petroleum Institute v. South Carolina Department of Revenue*, 382 S.C. 572, 677 S.E.2d 16 (2009), an opinion that describes itself as a "depart[ure] from recent precedent" of only one year before that—*South Carolina Public Interest Foundation v. Harrell*, 378 S.C. 441, 663 S.E.2d 52 (2008). *Am. Petroleum*, 382 S.C. at 579, 677 S.E.2d at 19-20. In my opinion, even the rule announced in *American Petroleum* was unnecessary to resolve the controversy before the Court

---

[6] In their reply brief, Petitioners include a heading stating, "Ruling the Entire Act Unconstitutional . . . Can Be an Appropriate Remedy." However, they make no argument that doing so enables the relief they actually seek—ensuring the issues raised in the companion case are ripe for judicial determination.

in that case.[7]  I believe this Court should adhere in this case to its "firm policy of declining to reach constitutional issues unnecessary to the resolution of the case before us."  *Fairway Ford,* 324 S.C. at 86, 476 S.E.2d at 491.  By doing so, we might find it unnecessary to change the law so frequently.

For the reasons explained, I respectfully dissent.

---

[7] In *American Petroleum*, the Court considered a challenge to an act containing four sections—one providing a sales tax exemption for "certain energy efficient products," one providing a sales tax exemption for "sales of handguns, rifles, and shotguns during the 'Second Amendment Weekend,'" one regarding the blending of fuel with ethanol and having nothing to do with any sales tax exemption, and one providing the effective date.  382 S.C. at 575, 677 S.E.2d at 17.  The challenge was brought by the American Petroleum Institute, and related only to the fuel blending provision—not the sales tax exemptions.  382 S.C. at 576, 677 S.E.2d at 18.  The controversy before the court, therefore, involved whether the businesses represented by the Petroleum Institute and the intervenor South Carolina Petroleum Marketers Association must comply with the fuel blending provision.  The controversy had nothing to do with the payment of sales taxes on energy efficient products or firearms.  To resolve the controversy before the Court, therefore, it was not necessary to determine the constitutionality of any sales tax exemption.  Nevertheless, the Court proceeded to make the broad proclamation that it was "constrained" to declare the entire act unconstitutional.  382 S.C. at 578, 677 S.E.2d at 19.